IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID W. RUSH, ) | |
| Plaintiff, ) | |
| v. ) | C.A. 07-514-SLR |
| CORRECTIONAL MEDICAL SERVICES, Inc, et al, ) | |
| Defendants. | |

FILED SEP 12 2007 U.S. DISTRICT COURT DISTRICT OF DELAWARE

## MRMORANDUM IN SUPPORT OR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Statement of Case

This is a civil rights action brought under 42 U.S.C., section 1983 & 1197. Rush also invoked pendent jurisdiction to hear any subordinate state tort claims under 28 U.S.C. section 1367. Rush is a state prisoner and pro se litigant who has filed under informa pauperis filing status. Rush seeks the instant injunction (PI) to ensure he receives emergency medical care appropriate for his dire medical conditions.

Statement of Facts

As stated in the Declaration (Decl) above, Rush suffers from:
ACUTELY PAINFUL LIPOMAS AND ATROPHIED SHOULDER MUSCLE and

LATE-STAGE ACUTE HEPITITUS C AND LIVER CIRRHOSIS. Both require immediate emergency medical care. (See Decl. at Sections 1 & 2).

### SECTION 1. ACUTELY PAINFUL LIPOMAS AND ATROPHIED SHOULDER MUSCLE1

1. Rush suffers from an hereditary form of benign cancer that will never heal on its own and only becomes progressively worse in which acute pain and suffering, significant damage to muscle, blood vessels, nerve, and tissue damage is common. Rush's Lipomas are late-stage and he has and continues to experience the above. Also, because several Lipomas have become so large (e.g. about the size of a golf ball), Rush will experience unnecessary and avoidable significant tissue and nerve damage from their belated excision. (See Ex-Section 1 at items marked A "Aff't of Official Medical Records").

2. Rush has several late-stage Lipomas in several areas about his body (See Complain at items 26 (a) thru (C)).

3. Rush's Lipoma growths are an on-going and continuous medical condition that evolved into the late-stage serious medical condition about September 2005. First Correctional Medical (FCM); however, noted as early as March 2005 the "Urgent" need to remove them. (See Ex-Section 1 at items marked B, p.p. 1-3).

4. Said Lipomas have steadily increased in size, frequency, and severity to the extent that Rush experiences the following on a daily basis:

(a) Acute pain and suffering that significantly impairs Rush's normal daily functions, and which has caused significant deterioration to Rush's physical being, (See Ex-Section 1 at items marked C, p.p. 1-3 & 4);

(b) Has caused or is causing significant collateral residual permanent injury, such as an atrophied shoulder (i.e. droopy or sloping down muscle), (See Ex-Section 1 at items marked D, p. 1);

1

(c) Has caused or is causing frequent ruptured blood vessels, pinched and aggravated muscles, nerves, and deep bruising and related permanent tissue damage/and or nerve damage, (See Ex-Section 1 at items marked E, p. 1);

(d) Has caused or is causing Rush to experience significant mental and emotional distress and damaged reputation and standing in the community, (See Ex-Section 1 at items marked F, p.p. 1-2); and

(e) Does present a significant residual threat to Rush's future health via falling or collapsing incidents and/or dropping of items on himself or others, (See Ex-Section 1 at items marked G, p. 1-4).

Rush has notified CMS of his acute pain and suffering and his significant impairment of normal daily functions [1] on several occasions through formal Notices, Formal Medical Grievances, and repeatedly at doctor's visits. (See Ex-Section 1 at items marked H, p.p. 1-10 & items at I, p.p. 1-6 "* Medical Records").

6. Rush's Emergency Medical Grievance (EMG) was even upheld on 12-16-2005 at the final and highest level of the D.D.O.C. via the Bureau Chief, and thus the identical relief Rush requested therein as here was also upheld. (See above at item H, p.p. 3-10). CMS also acknowledged the vIalibility (i.e. "merit"), of Rush's serious medical condition on 03-09-2006 -and the identical relief Rush requested- but CMS ahs never provided the relief. (See Ex-Section 1 at items marked J, p. 1).

7. Multiple excision (i.e. general surgery) consult referrals were filed by treating physicians, but it was never realized despite Rush's EMG being upheld and despite CMS acknowledgement of Rush's claims of a serious medical conditions that required immediate and appropriate care (i.e. "merit"). (See Ex-Section 1 at items marked K, p.p. 1-4 "* Medical Records).

8. Rush's pain and suffering and his significant impairment of his normal daily functions is so severe that his diminished mobility was mistaken for a torn rotator cuff, but ultimately it turned out to that the original Lipomas had caused significant residual injury to Rush's shoulder (i.e. atrophy, downward sloping muscle, etc). (See C and D above).

9. The over-the-counter Morin (pain meds), is also known by CMS to be wholly ineffective at managing Rush's severe pain and suffering. (See Ex-Section 1 at items marked L, p.p. 1-6). Moreover, it has endangered Rush's acute liver disease by aggravating and overwhelming the fragile impaired functioning liver. (See Ex-Section 2 at items marked A). This has and does expose Rush to immanent future health risks unnecessarily.

10. Rush's Lipomas were coded "Urgent (1-2 wks)" by FCM back on 03-16-2005, ((See above Ex-Section 1 at items marked I, p.p. 1 "* Medical Records"), and again by an outside specialist on or about 04-28-2006. The latter was omitted by CMS when it produced Rush's MR; however, the Lipomas could only have grown markedly worse over the year from 03-16-05 to 04-28-06 in any event.

---

1. Significant impairment of Rush's normal daily functions shall mean the following: (a) A substantial impairment of grip, mobility, and range of motion in both of his arms; (b) A substantial impairment of his ability to lift or carry nominal weights exceeding ten pounds; and (c) A substantial impairment in his ability to bath, sleep, work, and/or promote good health via meaningful exercise.

2

**SECTION 2. LATE-STAGE ACUTE HEPITITUS C AND LIVER CIRRHOSIS**

11. Rush suffers from a fatal disease that will never heal on its own, will cause premature death and end-organ failure, and has already caused other related collateral near fatal injury (e.g. ruptured esophagus and internal bleeding). (See Decl. at item 4 (a)-(f)). Moreover, Rush has already experienced and/or is experiencing the following:

    (a) Has caused or is causing significant permanent injury (e.g. at minimum stage three of four stages of liver disease) (See Ex. Section 2 at item A Affidavit);

    (b) Has caused or is causing significant and rapidly worsening increase in Rush's liver enzyme levels, (See Ex. Section 2 at item B, p.p. 1-13);

    (c) Has caused or is causing significant and rapidly worsening decrease in platelet levels, (See Id);

    (d) Has caused or is causing significant and rapidly worsening increase viral load levels, (See Id);

    (e) Has caused or is causing significant related collateral near fatal permanent injuries (e.g. ruptured esophagus and blood vessels causing significant and serious internal bleeding) (See Ex. Section 2 at item A Affidavit);

    (f) Has caused or is causing significant a very real and fast approaching threat of a loss chance of any recovery whatsoever, (See Ex. Section 2 at item C, p.p. 1-3);; and

    (g) Has caused a very real and fast approaching threat of premature death. (See Ex. Section 2 at item A Affidavit) (Rush incorporates items 290-423 of his Complaint herein).

12. Rush has notified CMS of his wish to receive the appropriate and life-saving medical care (e.g. Interferon), for his fatal and late-stage Hep C and Liver Cirrhosis on several occasions through official Notices, Medical Grievances, and via personal visits to the Infectious Disease doctors. (See Ex. Section 2 at item D, p.p. 1-7 & 8-15).

13. Rush was recently informed by doctor MacDonald that his acute late-stage Hep C and Liver Cirrhosis has likely progressed into the final fourth stage of cirrhosis, and that he may have already passed the point of eligibility for any treatment whatsoever, because the risks outweigh the potential benefits; and that if he began Interferon treatments it would be imperative that his liver numbers would have to be monitored closely to determine if the Interferon should be discontinued. (See Ex. Section 2 at item A Affidavit).

14. CMS has been aware of Rush's rapidly worsening condition, but has employed several erroneous and bad faith stalling tactics to deny treatment (create an inordinate delay), until treatment is no longer an option and Rush simply dies prematurely in violent fashion. Indeed, Altman, CMS Ombudsman, even related false medical information in an effort to justify CMS's failure to provide Rush the necessary treatments on 10-20-2006. Specifically, Altman stated that Rush's liver blood tests indicated his numbers were improving, however, Rush found out after receiving his relevant medical records that Altman's statement of improving numbers was patently false. (See Ex. Section 2 at item E and B 1-13 "* Medical Records).

15. Consequently, CMS has maliciously and with gross deliberate negligence/indifference created such an inordinate delay in providing Rush needed medical care, that his life is imminently threatened and he may now be ineligible for any alternative treatment and/or require a liver transplant.

16. Rush faces a substantial and likely threat of premature death by the continued denial of appropriate treatment, and it was wholly avoidable and unnecessary had CMS simply provided its contracted and ethical duty to provide Rush the needed and known medical care in a timely and appropriate fashion, like his classic and elemental symptoms mandated. This is no mere allegation or speculation, but a medical certainty.

## ARGUMENT

THE PLAINTIFF IS ENTITLED TO TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCITON

A litigant is entitled to a TRO/PI upon showing the following:
1. That the Plaintiff has incurred or is likely to incur irreparable injury'
2. That the non-moving party will not be unduly harmed;
3. That the Plaintiff has a strong likelihood of success on the merits; and
4. That the TRO/PI is consistent with public interest.

(See Valentine v. Beyer, 850 F.2d 951, 955 (3d Cir. 1988), Maldonado v. Houston, 157 F.3d 179, 184 (3d. Cir 1997), and SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985)).

➤ IRREPARABLE INJURY

1. Rush suffers from two serious medical conditions that have already caused him significant irreparable injuries and are also likely to cause significant future residual tangible injury –if not premature death and end-organ failure. Specifically, Rush faces the following: (a) Acute pain and suffering from his late-stage painful Lipomas, (b) The significant impairment of his normal daily functions and significant deterioration of his physical being, and severe emotional and mental distress, and (c) Permanent injury via liver cirrhosis, etc that will cause premature death and/or related permanent and/or equally fatal collateral injuries (e.g. ruptured esophagus and internal bleeding). Rush incorporates all points above at Declaration items 2-4 and his Memorandum herein).

2. For example, Rush's medical conditions are objectively serious and even diagnosed by competent physicians as requiring medical care. (See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed2 811 (1994). Indeed, the acute late-stage Lipoma growths are so obvious that even a lay person could infer the need for immediate medical care. (See Foelker v. Outagamie County, 394 F.3d 510, 512-13 (7th Cir. 2005). Moreover, both conditions have been diagnosed as requiring immediate medical care and are thus deemed "serious medical" conditions under this scheme and mandate treatment. (See Estelle v. Gamble, 429 U.S 97, 105, 97 S.Ct. 285, ____, 50 L.ed2 251 (1976). Consequently, Rush faces a likely and substantial risk of residual and tangible permanent injury due to the very emergency nature of his conditions sufficient to meet Valentine. Rush's health land well being are the most important issue to him; however, they are not the only sources of his unnecessary suffering.

3. In addition, Rush alleges that defendants have committed any of- but not limited to- the following violations:

4

(a) Intentionally disregarded and with gross negligence denied rush needed care for his known and obvious medical conditions;
(b) Intentionally disregarded and with gross negligence did provide a known substandard treatment that also aggravated his preexisting condition and did endanger his life;
(c) Intentionally disregarded and with gross negligence did create an inordinate delay in providing the known needed treatment; however, absent any valid medical criteria and or exercise of professional judgment.

4. Accordingly, defendants' culpable conduct and malfeasance is a clear violation of Rush's constitutional rights in violation of the Eight Amendment's ban on cruel and unusual punishment and does also constitute irreparable harm. (See Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976)). The Elrod Court noted, in addressing medical malfeasance, that our courts are in agreement that money awards are unthinkable compensation late. (Id). This is particularly true in cases of risk to health and life as here. (See Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983)).

> **ABSENCE OF HARM TO NON-MOVING PARTY**

5. The balance of hardship overwhelmingly favors Rush in this case, because he faces immanent premature death from his late-stage Hep C and liver cirrhosis, and he is suffering acute pain and suffering reminiscent of torture form his late-stage Lipomas. Indeed, both have been diagnosed (Lipomas were coded "urgent" back in 2005, and it is clear that the Hep C has dangerously if not fatally progressed). Indeed, Rush's late-stage Hep C and liver cirrhosis caused Rush's esophagus to rupture and caused massive internal bleeding, which is likely to reoccur absent timely and appropriate care. Rush's Hep C and liver cirrhosis has progressed to the fourth and final stage, which is the most severe and may make Rush ineligible for any viable treatment, and according to Doctor Macdonald, Rush will not receive a liver transplant despite the fact that CMS caused this progression. Premature death is certain absent emergency medical attention regarding Rush's Hep C. Consequently, the present suffering of Rush and the likely substantial risk of permanent injuries/future harm to him is enormous. Alternatively, the suffering that CMS, the contracted health service provider (CHSP), will experience if the Court grants the instant injunction is minimal and nothing more than what is expected of any CHSP.

For example, excision of the Lipoma growths, and rehabilitation of any damaged muscle, tissue, nerve, and or blood vessels is something any CHSP is obligated to do. The same holds true for Rush's Hep C and liver cirrhosis.

6. CMS's hardship amount to nothing more than the very business that it agreed to perform when it contracted to provided health services to the inmate population with the D.D.O.C. back in July 2005. In reality, CMS had no legitimate standing to claim otherwise, and the fact that CMS continues to deny Rush the necessary medical care he so desperately requires, does establish CMS's deliberate indifference. Indeed, until CMS faces real hardship (e.g. fines equivalent to the wind fall secured by denying needed medical care -blood money profits), CMS will undoubtedly continue with its business plan of employing a custom/policy of denying needed care for its charges.

> **PLAINTIFFF WILL LIKELY SUCCEED ON THE MERITS**

8. Rush has a great likelihood of success on the merits, because defendants' shocking behavior is a clear violation of the constitution: Deliberate Indifference to a serious medical condition, and defendants have no legitimate

medical factor in which to justify their repeat and prolonged denials of needed medical care for Rush's diagnosed serious medical conditions. For example, defendants have engaged in any -but not limited to- the following:

    a. Intentionally interfered with medical treatment that had been prescribed by a treating physician, such as by creating avoidable inordinate delays in providing excision of the Lipomas and by not treating the Hep C (See Jackson v. F.C.M.S., 380 F. Supp. 387 (D. Del 2005) and Spruill v. Gillis, 372 f.3d 218, 236 (2004, and Estelle, supra));

    b. By creating a continuous pattern of inordinate delay in providing needed treatment and or by employing a known systemic breakdown despite the obvious need to correct it (See Jackson, supra);

    c. By employing policies that fail to meet the immediate and emergency needs of Rush, such as during the progressively worsening Hep C and cirrhosis, and acutely painful Lipoma growths. (See Natale v. Camden County Corr' Facility, 318 F.3d 575, 583 (3d Cir. 2003);

    d. By denying needed prescribed medications that resulted in undue pain and/or suffering or in residual injury, such as those caused by Rush's untreated Lipomas (e.g. atrophied shoulder, etc), and the progression into the final stage of liver disease. (See Monmouth County Corr. Inst. Inmates v. Fauver, 479 F. Supp 326, 347 (3d Cir. 1978) and Pace v. Fauver, 479 F. Supp. 456 (D. N.J. 1979));

    e. By denying treatment that results in permanent injury, such as untreated Hep C and liver cirrhosis. (See White v. Napoleon, 897 F.2d 103, 111 (3d. Cir. 1990), Estelle, supra, Spruill, supra, and Monmouth County, supra));

    f. By intentionally employing less efficacious treatments, however, for non-medical factors, such as budgetary restrictions and or via a custom/policy of arbitrary medical care denials (e.g. for cost-avoidance), which may be inferred by CMS failing to provide Rush the needed life-saving Interferon treatments for over a year – while Rush progresses into fatal liver disease- and causing Rush to suffer permanent injury. ( See West v. Keve, 571 F.2d 158 (3d Cir. 1978), Williams v. Vincent, 508 F.2d 541 (2d, Cir. 1974); Tillery v. Owens, 719 F. Supp. 1256, 1287 (W.D. PA 1989) aff'd 907 F.2d 418 (3d Cir. 1990); and Durma v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir. 1993)). and

    g. By intentionally attempting to inflict harm upon Rush and or by doing so through gross reckless disregard to obvious painful/suffering conditions, which are evinced in the complaint and by Rush's medical records in which CMS's various acts of maliciousness, hostility, sadistic, and or retaliatory behavior towards Rush. (See Spruill, supra at 231).

Accordingly, Rush has properly alleged and properly supported with facts (e.g. medical records, affidavits, CMS correspondence, and notices, etc), all the essential elements for his claims of CMS's deliberate indifference to Rush's serious medical needs.

- Objective serious medical condition/needs;
- Objectively known by defendants and; however,
- Subjectively disregarded by defendants (i.e. personal and culpable involvement/ acts).

10. Moreover, the above deliberate indifference need not await any further physical injury, though Rush has already experienced significant permanent injury, but psychological injury also requires corrective action. (See White, supra).

> ## RELIEF SOUGHT WILL SERVE THE PUBLIC INTEREST

11. The public interest is best served when all ill prisoners are granted adequate health care. (White, surpa at 111)(Citing Estelle v. Gamble, 4239 U.S. 97 (1976))(Prompt medical care is needed to avoid unnecessary and wonton infliction of pain). Also, the public interest is served because it is always in the public interest for defendants /prison officials to obey the law. (See Duran v. Oakland County Prosecutor's off'. 402 F. Supp. 1379, 1393 (E.D. Mich. 1975) ("the Constitution is the ultimate expression of the public interest.")).

> ## PLAINTIFF SHOULD NOT BE REQUIRED TO POST SECURITY

12. Rush is an indigent prisoner and is unable to post security and he requests the Court to exercise its discretion to excuse an impoverished litigant from doing so. In view of the serious medical dangers confronting rush, the Court is warranted in granting the relief requested without requiring the posting of security.

## CONCLUSION

For the foregoing reasons, the Court is moved to grant the motion in its entirety.

_David Rush_
David Rush, SBI # 173418, 1181 Paddock Rd.
Smyrna, DE 19977

8-27-07
Date