

FILED

SEP 1 2 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

# APPENDIX

TABLE OF CONTENTS FOR EXHIBITS

**Section 1**. Lipoma Records, etc:

Affidavit of Medical Records . . . . . . . . A (1-4),

* FCM Exam Form . . . . . . . . . B (1-3),

Aff'ts Relating to Impairment of Normal Daily Functions . . . . . C (1-3, 4),

* MRI Report & CMS Progress Reports . . . . . . . D (1-3),

Aff't of Ruptured Blood Vessels . . . . . . . E (1),

Aff't of Emotional and Mental Distress/Damaged Reputation . . . . F (1-2),

Incident Reports & Work Loss . . . . . . . . G (1-4),

Notice Letters & Emergency Medical Grievance . . . . . H (1-10),

* Medical Records . . . . . . . . . I (1-5),

CMS acknowledgment of Serious Medical Condition . . . . . J (1),

* CMS Consult Requests . . . . . . . . K (1-4), and

Medical Grievances . . . . . . . . . L (1-6)


**Section 2**. Hep C and Liver Cirrhosis, etc:


Aff't (Final stages of liver disease & Esophagus rupture) . . . . A ( 1-4 ),

* Medical Records of Increasing Liver Enzymes, etc. . . . . . B (1-13),

* Decreasing Platelet Levels . . . . . . . B (1-13),

* Viral Load Count . . . . . . . . B (1-13),

Aff't (Possibly rendered Ineligible for any treatment whatsoever). . . C (1-3),

Notices & Medical Grievances . . . . . . . D (1-7 & 8-15),

CMS's False Liver Number Improvement Statement . . . . . E (1).

EXHIBIT A

## AFFIDAVIT OF DAVID RUSH

1. I, David Rush, am the Affiant listed above and do depose and state the following:

2. On 05-20-2006, Affiant executed and bestowed Power of Attorney on Sheryl Rush-Milstead, Esq., for the purpose of securing Affiant's official personal medical records (MR) from defendant Correctional Medical Services (CMS).

3. Milstead executed the MR request on behalf of Affiant on or about 06-13-2006 (See attached at A-1).

4. Affiant received most of his MR some time in September 2006, but executed a second MR request for the remaining MR thereafter.

5. On 10-13-2006 Affiant received the –as then the remaining MR- from CMS; however; medical grievances were omitted from the MR. (See att'd at A-2 & 3).

6. Affiant has reviewed each and every MR/document that CMS had provided and Affiant affirms under penalty of perjury that he has produced in turn true and correct copies of his official MR as exhibits. (Note that Affiant's personal official MR are denoted with an astrix " * " at the Table of Contents of Exhibits attached to his Memorandum in Support of Plaintiff's TRO/PI).

7. The above is True and Correct.

Sworn and Subscribed before me this  __23__  day of August 2007.

David Rush, SBI # 173418
W-1, D-16
1181 Paddock Rd.
Smyrna, DE 19977

Notary Public

Commission expires; June 14, 2008

1

A-1

**Sheryl Rush-Milstead, Esquire**
**Attorney-At-Law**
**31 West 40th Street**
**Wilmington, DE  19802**

June 13, 2006

CMS
Delaware Regional Office
1201 College Park Drive, Suite 101
Dover,  DE 19904

Dear Records Clerk:

Enclosed please find a signed and dated Release Form submitted on behalf of David R. Rush.  Please note the type of records as well as the dates within which parameters the records are being requested.

Your prompt attention to this communication as well as a prompt response will be appreciated, and expected.

Sincerely,

Sheryl Rush-Milstead

SR-M/wp
Encl:  Release
xc:    David R. Rush

A.2

# PUBLIC DEFENDER OF THE STATE OF DELAWARE
### SYKES BUILDING
### 45 THE GREEN
### DOVER, DELAWARE 19901

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

SHERYL RUSH-MILSTEAD
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 739-4476

**October 13, 2006**

**David R. Rush**
**SBI# 173418, Bldg. W**
**1181 Paddock Road**
**Smyrna,  DE  19977**

**Dear David,**

I am forwarding the docs and the accompanying letter from CMS, which was sent in response to our second request for documents in your medical files.

I was glad to be able to act as your shield at the picnic.  With Mom sitting across and down from you, and you and Dad often engrossed in conversation, I was a much closer and therefore, easier target.  Glad to help out my little bro in any way, any time.  Like Geraldo says, she's an old lady.  Don't pay her any mind.  Sometimes I think she just wants to be part of the conversation, but didn't hear the beginning, doesn't care about the subject area, etc, so just decides to fall back on what she does and know best – criticism.  It's her stock in trade.  I couldn't stand to be that unhappy, and you know, I can't figure out why she still is.  Oh, well.

I will be on the lookout for the request for medical docs being sent by your assistant.

Love,

A.3



**CMS**
DEDICATED PEOPLE
MAKING A DIFFERENCE
Correctional Medical Services

29 Sep 2006

FROM:    Correctional Medical Services
1201 College Park Dr; Suite 101
Dover DE 19904

TO:    Sheryl-Rush Milstead, Esquire
31 West 40th Street
Wilmington DE 19802

SUBJECT:    Medical Record Copies

Ms Rush;

The additional information you requested is enclosed. The grievances are not a part of the medical record; they are an administrative process directed by the DDOC and copies of these forms and their resolution would have to be requested from them. There is no charge for the additional information you requested.

Sincerely,

Scott S. Altman
CMS QA Monitor

A·4

EXHIBIT C

I, David Rush, am the Affiant listed above and do depose and state the following:

1) Affiant suffers from an on-going and recurring from of cancer "Lipomas" that causes acute pain and suffering.

2) Lipoma growths are generally a benign form of cancer, but because they progress in size and shape on or about the muscles and nerves, they cause acute pain, impair mobility and normal daily functions when in an advanced stage. Affiant's condition is currently in an advanced stage, and any layman could, just by a casual observation, reasonably infer that they cause Affiant acute pain and suffering.

3) Moreover, Affiant's medical file documents a total of three past operations to remove the painful Lipomas due to their advanced stages over the years.

4) Affiant filed a Medical Sick Call Slip (sick call hereafter) with CMS on September 30, 05 indicating that he is again in advanced stages, and because the Lipomas are causing him acute pain and suffering and the impairment of normal daily functions, Affiant is in need of essential treatment (i.e. Lipoma removal).

5) CMS confirmed receipt of sick call slip on October 3, 05, and stated that Affiant was on a list "**To be seen.**"

6) As of December 12, 05 (over 70 days later) Affiant has not even been scheduled in for an initial consultation or received any treatment whatsoever.

7) Affiant gave "Notice" to CMS via letter c/o Mrs. Plante, Administrator on 12/12/05. And filed an Emergency Medical Grievance on 12/16/05. EMGs are to be reviewed and responded within 24 hours if the Warden/Warden's designee finds that immediate attention is necessary as per Grievance Procedure 4.4.

8) Affiant is needlessly suffering acute pain and impairment of normal daily functions despite CMS's knowledge of same. For example, Affiant has advanced growths on his left forearm, right upper arm-above the elbow, and on the left side of his chest/ribcage, of which impairs his mobility to the effect that he cannot fully shower himself and experiences acute pain; impairs his ability to get a full night's sleep because upon contact the sharp, searing pain will jolt him awake; nerve related sporadic searing pain and discomfort; and absolutely nullifies his ability to promote good health via meaningful exercise which is likely to damage future health and well being. In fact, Affiant has gained some twenty-five pounds because he cannot realize meaningful exercise, of which needlessly increases his likelihood of heart and coronary disease, high cholesterol, high blood pressure and other related diseases (i.e. end organ failure etc.). There is no legitimate penalogical objective in refusing or needlessly delaying essential treatment to Affiant, and CMS's policy/custom to deny essential treatment for non-medical reasons, such as cost savings, does evidence a deliberate indifference to Affiant's serious medical needs.

9) The above is true and correct as Affiant believes it to be.

SWORN and SUBSCRIBED before me on this _15 Th_ day of _December_ , 200_5_.

Notary Public

David Rush

C-1

### AFFIDAVIT OF DAVID RUSH

1. I David Rush am the Affiant listed above and do depose and state the following:
2. Affiant was belatedly scheduled to meet with the health care provider (CMS) on 1/05/06 regarding his acute Lipomas –a serious medical condition that substantially limits his normal daily life activities. Ninety-six days had elapsed since Affiant filed a "Sick-call slip;" and nineteen days had elapsed since Affiant filed an Emergency Medical Grievance, which detailed his acute condition, its effects, and the fact that Affiant had, on three prior occasions, been diagnosed and treated (surgery) for the very same condition. (Has re-emerged).
3. Affiant met with Dr. John Doe _____ and explained in detail Affiant's extreme suffering, which included:
➢ Severe lack of mobility that renders Affiant unable to shower properly (i.e. wash hair, arms, and shoulders;
➢ Unable to lift and move even small objects which has adversely affected his work performance;
➢ Unable to realize meaningful exercise, which does impair Affiant's ability to promote good health (e.g. in fact, Affiant has experienced significant weight gain and is now classified as obese with all its inherent and likely health problems);
➢ Is generally unable to enjoy life due to the painful flair-ups that frequently occur upon contact and or general movement; and
➢ Does experience acute sleep depravation, because both arms and Affiant's ribcage have advanced and extremely painful Lipomas that upon contact (i.e. rolling over) jar Affiant awake in agony and searing pain.
4. The doctor treated Affiant with contempt and indifference. He constantly interrupted Affiant and talked over Affiant making inappropriate and dismissive comments and actually attempted to silence Affiant from explaining his ailment and its effects. For example, the doctor seized upon Affiant's description of his sleep position as the factor that must somehow be aggravating the "nerve clusters" that run throughout the body to explain away Affiant's pain and mobility problems. The Doctor completely dismissed Affiant's prior diagnoses and accepted treatment; the current physical/observable evidence of advanced Lipomas (which is the culprit activating any muscle/nerve clusters); and Affiant's clear disclosure of what he has unnecessarily suffered.
5. Because the obvious facts were dismissed out-of- hand as preposterous by the doctor and with a cavalier attitude, it is clear to Affiant that CMS has employed a custom/policy to "misdiagnose" or "under-diagnose" ailments in an attempt to avoid costly treatment, which was actually effected by their attending physician and evidenced by the facts above.
6. Affiant was silenced by the doctor who ended the appointment by stating, "I'm just going to schedule you in for a follow up consultation." Affiant replied that the "standard treatment was to remove the Lipomas, a simple outpatient procedure," that he has "suffered needlessly for an extended period" and that there was "no legitimate reason to delaying the treatment." "You will be rescheduled," was the doctor's reply.
7. Affiant pleaded for pain medication during the interim, but all he received was: "Don't they sell Tylenol at the commissary?...That is sufficient for this problem.' ·
8. The above is true and correct as Affiant believes it to be.

SIGNED and SUBSCRIBED before me this ___ 26 ___ day of Janaury 2006.

_David Rush_
David Rush

_Edward Johnson_
Notary

C-2

1. I David Rush am the Affiant listed above and do depose and states the following:

2. On March 14, 2006, Affiant was seen by Dr. ⎵DURST⎵; however, he did not know why Affiant was scheduled in.

3. Affiant explained that he had submitted a Sick Call slip some 165 days earlier, and an Emergency Medical Grievance (EMG) nearly 90 days earlier for his acutely painful Lipomas – and that they were allegedly scheduled to be removed. (According to IGP 4.4…, EMGs are to be heard within 24 hours, but, to date no Medical Grievance Hearings whatsoever have been conducted).

4. The Doctor exclaimed: "Oh, it's anybody's guess when you will have them removed but let's examine you anyway."

5. Consequently, the Doctor discovered and diagnosed Affiant with a "torn rotator cuff" (right shoulder in addition to his several painful lipomas. He Ordered an "MRI" to be preformed for the torn rotator cuff.

6. Affiant also queried the Doctor about whether his March 1, 2006 (Hepatitis) blood test of came in, and Affiant was told that He had tested positive for Hep C and that a subsequent blood test would have to be performed to determine His "count."

7. The Doctor engaged in a campaign to belittle the significance of Affiant's disease by stating that "Oh, don't worry about it, about seventy-five percent of the population has Hep C, and you don't want to begin treatment unless your numbers are high." However, he never disclosed what the applicable range of high/low numbers were, nor did he disclose whether Affiant was scheduled for the necessary follow up blood test.

8. Affiant then explained that though he had had an initial consultation and a follow up visit regarding His lipomas, in which He explained in detail His needless pain and suffering and impairment of normal daily functions, and had pleaded for some minimum relief (pain reliever), He was refused on all occasions. Affiant even filed two letters of "Notice" with CMS and pertinent personnel explaining the same, but received no relief and no actual treatment whatsoever. Affiant continued that He has incurred related accidents at work and one at His housing unit because of aggravating the acutely painful lipoma on His left arm and rib cage, and that CMS's inordinate delay in providing any actual treatment is unacceptable – especially when removal entails a mere local anesthetic and twenty minute inpatient sub minor surgery. (Affiant has had prior lipoma removal on several occasions by other providers).

9. The Doctor stated that he would place a prescription for pain relievers, but did not dispense any to Affiant directly though that would only entail a two minute visit to CMS's on-site pharmacy. Affiant will have to continue to wait needlessly, suffer needlessly, and return at a later date to pick up the pain relievers.

10. The above is true and correct to the best of Affiant's knowledge.

Sworn and Subscribed before me this ⎵22 nd⎵ day of ⎵June⎵ 2006.

David Rush, SBI # 173418                              Notary Public

C-3

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
## FACILITY: DELAWARE CORRECTIONAL CENTER
### This request is for (circle one): (MEDICAL) DENTAL  MENTAL HEALTH

DAVID   RUSH                                     W
_____        _____
Name (Print)                                   Housing Location

1-31-60              173418              9-30-05
_____      _____    _____
Date of Birth        SBI Number         Date Submitted

Complaint (What type of problem are you having?)   Suffering from several painful
lipomas in both arms and upper chest on the left side. Specifically,
a large lipoma is exerting pressure on the nerves etc. of my left forearm,
right upper arm below the shoulder and running lengthwise between tricept &
biceps, and on my left upper chest area. They are adversely effecting my daily function.

David Rush                              9-30-05
_____        _____
Inmate Signature                            Date

**The below area is for medical use only.  Please do not write any further.**

S:  _____

_____

_____

O:   Temp:_____   Pulse: _____   Resp: _____   B/P: _____   WT: _____

10/5/05  On Computer to be seen 1FLPN

A:  _____

_____

P:  _____

_____

_____

_____

E:  _____

_____

_____

_____        _____
Provider Signature & Title                   Date & Time

3/1/99 DE01
FORM#:                    C-4
MED
263

EXHIBIT E

## AFFIDAVIT OF DAVID RUSH

1.      I, David Rush, am the Affiant listed above and do depose and state the following:

2.      On 12/21/06 Affiant was seen by Dr. McDonald for a Chronic-care Clinic for his Hepatitis disease (received two vaccinations A-2 & B-3).

3.      Affiant subsequently inquired about his scheduled surgery for his late stage and painful lipomas and informed the new doctor of his past referral, scheduled, and hospital trip for the Lipoma removal surgery, and that it had been cancelled by the attending physician due to logistics at his facility. Affiant was informed that he would be re-scheduled for the surgery at another facility.

4.      McDonald replied: "Well, I'm surprised that they even sent you out for that because there are cost containment issues. It's usually an unnecessary operation unless they press against a nerve or rupture a blood vessel."

5.      Affiant explained that he indeed experiences severe pain likely due to his late stage lipomas pressing against a nerve and or the muscle; that it has impaired his ability to grab, hold, and lift items of nominal weight. That it impaired his ability to sleep because upon rolling over he would experience a sharp, sudden, and stabbing pain, and or his arm left arm would simply throb. And it was for these reasons that Affiant was scheduled for the needed surgery.

6.      McDonald acted as though he did not want to be concerned with Affiant's medical condition, nor did he check Affiant's medical file for the status of the re-scheduling of the surgery.

7.      Affiant attempted to show McDonald that he had a currently ruptured blood vessel in his left arm (Affiant is left-handed) due to the lipomas, and McDonald refused to even examine Affiant.

8.      Indeed, Affiant pointed out his ruptured vessel and where other lipomas growths were causing him pain, and McDonald became sarcastic and stated: "What, do you want me to squeeze them or something."

9.      McDonald was totally disinterested in Affiant's pleas, totally dismissive of Affiant, and displayed an attitude of disregard towards Affiant's painful condition, which had been ordered for surgery by Dr. Durst, and this was despite Affiant meeting McDonald's criteria for medical care (e.g. pressing on a nerve or ruptured blood vessel).

10.     The above is true and correct based on Affiant's personal experience and to the best of his acknowledge.

Sworn and Subscribed before me this ___23___ day of ___August___ 2007.


David Rush

Timothy J. Marts
NOTARY PUBLIC
Commission expires: June 14, 2008

# EXHIBIT F

### Affidavit of David Rush

1. I, David Rush, am the Affiant listed above and do depose and state the following:

2. On 12/14/06 Affiant was sent out to Kent General Hospital (outside run) to have a liver biopsy.

3. Upon getting  changed out into the hospital gown, Correctional Officer (C.O.) Tom Young pointed at Affiant's acutely painful and late stage Lipoma growth on Affiant's left forearm, and stated with obvious revulsion: "Man, what's that thing!"

4. Affiant explained the Lipoma condition to C.O. Young and C.O. Young unequivocally stated: "You should really get that *thing* removed while you are here!"

5. Affiant simply replied that he had been working on doing just that for over a year.

6. Shortly thereafter, a resident nurse came in to set up the I.V., etc, and promptly became startled when she mistook the same Lipoma for an adverse reaction to the needle she had recently given to Affiant. With alarm she also inquired for an explanation of Affiant's condition and Affiant had to again endure the shame and humiliation of his disfigurement while explaining the condition to the nurse.

7. Indeed, Affiant is constantly reminded of disfigurement, and not a week has passed over the past year that someone has not ridiculed, pitied, or shown Affiant revulsion and or was repelled by Affiant's condition.

8. Affiant has had to endure the acute physical pain and suffering of his acute Lipoma condition– and its inherent impairment of his normal daily functions- as well as shame and humiliation on a constant basis due to the disfigurement of the lipomas and their aggregate effects.

9. The above is the product of Affiant's personal observation and experience.

10. The above is True and Correct to the best of Affiant's knowledge.


Sworn and Subscribed before me this _21ˢᵗ_ day of December 2006.



David Rush

David Rush

Timothy J. Martin

Notary Public

my Commission expires: June 14, 2008


F-1

AFFIDAVIT OF JOSEPH WITTROCK

1. I, Joseph Wittrock, am the Affiant listed above and do depose and state the following:

2. In October 2006 (circa), Affiant received his annual physical with Dr. Vandusen, who is employed at that time with Correctional Medical Services and assigned to DCC prison.

3. At the physical, Dr. Vandusen took note of a growth on the side of Affiant's head located near his left temple; it was about the size of a raisin and it did not cause Affiant any pain or impair his normal daily functions whatsoever.

4. In fact, Affiant had had similar growths (e.g. senial-caratosis- spelling?) removed on prior occasions and learned that they are non-cancerous viral growths of little danger and only involve cosmetic concerns. Evidently, the incidence is related to genetics.

5. Nevertheless, Dr. Vandusen unilaterally decided to schedule Affiant to have the growth removed and informed Affiant of same despite Affiant's ambiguousness towards the matter.

6. In fact, Affiant never placed a Sick-call Request, grieved the issue, or brought the matter to CMS's attention (i.e. medical provider), but Affiant merely acquiesced to Vandusen's unilateral decision.

7. On 1/15/07 –about three months later- Affiant was sent out of the prison for the "out-patient" procedure to have the non-dangerous growth removed, and the procedure was completed at a dermatologist facility near the Christiana hospital without complications.

8. Affiant was surprised about receiving the largely unneeded out-patient procedure because Affiant is aware that his co-worker, David Rush, has been denied for over sixteen months an out-patient procedure to remove several of his acutely painful Lipoma growths that do, however, impair Rush's daily activities.

9. For example, Rush, who is left handed, has a hideously large Lipoma growth –about the size of a golf ball- on his left arm the causes him pain; an inability to grip or lift things; and or drop items; and, which has burst blood vessels in Rush's arm. This is easily visible with the naked eye. Indeed, Affiant has witnessed Rush's embarrassment and humiliation when people often inquire as to what his grotesque condition might be? (e.g. What is that, elephant arm?)

10. On several occasions at the work-site, Affiant had witnessed Rush experience acute pain and discomfort when attempting to use his left arm/hand, and or when he brushed it against something only to aggravate the growth and lose the use of his left hand/arm and clutch his arm in agony for several moments as a result.

11. The scene is quite disturbing to witness and Rush's suffering appears to be continuous.

12. The above is true and correct based on Affiant's personal experiences, observations, and to the best of Affiant's knowledge.

Sworn and Subscribed before me this ___18th___ day of ___January___ 2007.

_Joseph Wittrock_
Joseph Wittrock

_Timothy J. Marto_
Notary Public

my commission expires: June 14, 2008

F-2

# EXHIBIT H

David Rush, SBI # 00173418
1181 Paddock Rd.
Smyrna, DE 19977

Mrs. D. Plante, CMS Administrator
Re: Advanced Stage of Lipomas

Dear Mrs. Plante:

Greetings, I am writing to inform you of my necessary and essential need for immediate attention. Specifically, I require - once again – the removal of several advanced Lipomas. The following is in support of my prayers:

I suffer from an on-going and recurring from of cancer "Lipomas" that causes acute pain and suffering. Lipoma growths are generally benign, but because mine have progressed in size and shape on or about the muscles and nerves, I am in near constant and acute pain and suffering. They adversely impair my mobility and normal daily functions because of the advanced stage. In fact, any layman could, just by a casual observation, reasonably believe that they cause me acute pain and suffering.

Moreover, my medical file documents a total of three past operations to remove the painful Lipomas due to their advanced stages over the years. More recently however, I filed a Medical Sick Call Slip with CMS on September 30, 05 articulating my advanced stages, and because the Lipomas are causing me acute pain and suffering and the impairment of normal daily functions, I am in need of essential treatment (i.e. Lipoma removal). CMS confirmed receipt of sick call slip on October 3, 05, and stated that Affiant was on a list "**To be seen.**" As of December 12, 05 (over 70 days has passed), I have not even been scheduled in for an initial consultation or received any treatment, pain or otherwise, whatsoever. I am needlessly suffering acute pain and impairment of normal daily functions despite: for example, I have advanced growths on my left forearm, right upper arm-above the elbow, and on the left side of his chest/ribcage, of which impairs my mobility to the effect that I cannot fully shower himself and experience acute pain; impairs my ability to get a full night's sleep because upon contact the sharp, searing pain will jolt me awake; nerve related sporadic searing pain and discomfort; and absolutely nullifies my ability to promote good health via meaningful exercise which is likely to damage future health and well being. In fact, I have gained some twenty-five pounds because I cannot realize meaningful exercise. This needlessly increases my likelihood of heart and coronary disease, high cholesterol, high blood pressure and other related diseases (i.e. end organ failure etc.).

Consequently, I trust that this will serve Notice to you, CMS, of my serious medical needs and that I shall not have to endure any more needless pain and suffering. My intent is to avoid any further action that may include litigation, so in advance I thank you for your time and consideration with this matter.

*Daniel Rush*

David Rush    12 - 12 - 05

H.1

David Rush, SBI #173418
1181 Paddock Rd.
Smyrna, DE 19977

Correctional Medical Services, Offices
245 Mckee Rd.
Dover, DE 19904, 901

Re: Unnecessary Suffering Due to Advanced Stage of Lipomas

Dear Sir/Madam:

Greetings, this correspondence is to inform CMS of its failure to provide necessary and essential treatment for my advanced stage Lipomas. I have endured unnecessary pain and suffering, impairment of normal daily functions, and a likely substantial risk to my future health as a result of being denied essential treatment for my documented serious medical condition. This is despite my filing a Sick-call Slip, Notice to both CMS and Mrs. D. Plante, and an Emergency Medical Grievance (EMG). In fact, the one and only scheduling I received was delayed inordinately and amounted to a non-exam of which subjected me to scorn, contempt, indifference; and, incredulously dismissed my pleas, the observable facts, and my medical record. Other than a clear attitude of indifference, I received no treatment whatsoever.

For example, on 1/05/06 –ninety days after filing the Sick-call Slip and nineteen days after filing the EMG- I was seen by a doctor of perhaps Asian descent (refused to provide his name) who treated me with contempt and indifference. He refused to acknowledge the observable facts and my medical record, however, seized upon phantom justifications in an attempt to explain away my pain and suffering. His justifications were not supported by any valid medical criteria, and were in total conflict with the easily observable facts. Also, CMS and Mrs. Plante had received previous notice on 12/12/05, in addition to the ignored EMG dated 12/16/05; however, I never received any reply or meaningful follow up from either. Over four months have passed and despite my articulate and specific descriptions of my acute pain and suffering and pleas for the standard and essential treatment, I continue to suffer needlessly. CMS is contracted to provide health care services and its willful refusal to provide me the essential treatment I require shocks the conscience. This behavior will not be tolerated.

Lastly, in view of the fact that CMS has received adequate Notice yet has refused to provide the standard and essential treatment, it is clear to me that CMS's response and or willful omission to act evinces a policy/custom to deny essential treatment for my serious medical condition. I pray that this final notice motivates CMS to reverse its course and also correct the indifferent behavior of its employees. In the event that this matter is not corrected in a meaningful and timely manner, I will be forced to seek redress in the courts.

Sincerely,

David Rush

David Rush   2-20-06

H·2

**DEPARTMENT OF CORRECTION**
**Bureau of Prisons**
**245 McKee Road**
**Dover, Delaware 19904**

October 27, 2006

Inmate RUSH DAVID R
SBI # 00173418
DCC  Delaware Correctional Center
SMYRNA DE, 19977

Dear DAVID RUSH:

We have reviewed your Grievance Case # 21535 dated 12/16/2005.

Based upon the documentation presented for our review, we uphold your appeal request.

Accordingly, there is no further issue to mediate nor Outside Review necessary as provided by
BOP Procedure 4.4 entitled "Inmate Grievance Procedure", Level III appeals.

Sincerely,

Paul W. Howard
Bureau Chief

H·3

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 10/30/2006

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** RUSH, DAVID R | **SBI#** : 00173418 | **Institution** : DCC | |
| **Grievance #** : 21535 | **Grievance Date** : 12/16/2005 | **Category** : Individual | |
| **Status** : Resolved | **Resolution Status** : Level 3 | **Resol. Date** : 10/30/2006 | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/16/2005 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Grievant is being refused timely and essential medical treatment for his known serious medical condition by the medical care provider (CMS) for non-medical reasons. CMS confirmed receipt of Grievant's sick call request on 10-3-05 and they perfunctorily stated Grievant was on the list to be seen. However, to this date he has not even been scheduled for an initial consultation. CMS is exposing Grievant to acute pain and suffering, and likely irreparable injury despite their knowledge of his serious medical needs and deliberate indifference to those serious medical needs.

**Remedy Requested** : Immediate scheduling of an initial interview followed by a timely surgery to remove lymphomas. Damage awards to compensate for the infliction of unnecessary pain and suffering.

### INDIVIDUALS INVOLVED

| **Type** | **SBI #** | **Name** |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** YES | **Date Received by Medical Unit :** 12/23/2005 |
| **Investigation Sent :** 12/23/2005 | **Investigation Sent To** : Rodweller, Deborah |
| **Grievance Amount :** | |

H.4

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

# INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION |
|---|

| | | | |
|---|---|---|---|
| **Offender Name : RUSH, DAVID R** | **SBI#** : 00173418 | **Institution** : DCC | |
| **Grievance #** : 21535 | **Grievance Date** : 12/16/2005 | **Category** : Individual | |
| **Status** : Resolved | **Resolution Status:** Level 3 | **Inmate Status :** | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/16/2005 | **Incident Time :** | |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | | |

| INFORMAL RESOLUTION |
|---|

**Investigator Name** : Rodweller, Deborah                    **Date of Report** 07/18/2006

**Investigation Report :** gENERAL SURGEON CONSULT COMPLETED ON 4/28/06. DR DURST SIGNED ON 05/01/06. WAS REFERRED FOR BIOPSIES OF LYMPOMAS BY GENERAL SURGEON. WILL HAVE DR DURST REVIEW CHART WITH THIS AND CONSULT CLERK. REVIEWED WITH CONSULT CLERK, GENERAL SURGEON SENT LETTER STATING ~~THAT SURGERY WAS ELECTIVE.~~ LETTER PLACED IN INMATES CHART. NEXT LEVEL

**Reason for Referring:**

**Offender's Signature:**_____

**Date**              :_____

**Witness (Officer)**  :_____

**Page 2 of 7**

H.5

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** RUSH, DAVID R | **SBI#** | : 00173418 | **Institution** : DCC |
| **Grievance #** : 21535 | **Grievance Date** : 12/16/2005 | | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/16/2005 | | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | | |

### IGC

**Medical Provider:**          **Date Assigned**

**Comments**:

To recover monies for unnecessary pain and suffering you must contact a lawyer. IGC cannot and will not become involved in civil litigation.

Per D/W Pierce, This grievance is re-opened.

    [x] **Forward to MGC**         [ ] **Warden Notified**

    [ ] **Forward to RGC**         **Date Forwarded to RGC/MGC :** 12/23/2005

    [x] **Offender Signature Captured**     **Date Offender Signed**     :

H-6

**DCC** **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

**Date: 10/30/2006**

## GRIEVANCE INFORMATION - Appeal

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| **Offender Name : RUSH, DAVID R** | **SBI#** : 00173418 | **Institution** : DCC |
| **Grievance #** : 21535 | **Grievance Date** : 12/16/2005 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/16/2005 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | |

| APPEAL REQUEST |
|---|

Appeal arrived 10/9/2006. Appeal accepted, Cpl Merson did not collect grievances/appeals due to being out on leave.
Appeal states: Grievant filed this grievance for painful lipomas back in Dec. 05. this was because the prior sick call slip was ignored. It had been filed on 9-30-05. During the interum CMS has employed a custom/policy to delay and or avoid providing the necessary medical treatment: from intentional misdiagnosis that discounted the observable facts and medical history, to creating straw dog phantom condition, to simply refusing to conduct the relatively simple out-patient surgery.
These (advance-stage) lipomas have greatly impaired my normal daily functions: unable to sleep, promote health via meaningful exercise, unable to grip, lift or carry objects over ten pounds, and they have caused me avoidable accidents that do/will likely result in future injuries. In fact, once I overcame all the erroneous obstacles that CMS employed to delay, avoid and frustrate me with, the doctor acknowledged the seriousness of the painful lipomas and ordered "Urgent" surgery sometime in March 06, but to date the doctors order has been refused by CMS with no valid penological or medical criteria. There is no valid reason for CMS to continue to create a delay/deny needed treatment, and the harm done warrants damages.

| REMEDY REQUEST |
|---|

H-7

**DCC  Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 10/30/2006

## GRIEVANCE INFORMATION - BGO

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|

| | | |
|---|---|---|
| **Offender Name :** RUSH, DAVID R | **SBI#** : 00173418 | **Institution** : DCC |
| **Grievance #** : 21535 | **Grievance Date** : 12/16/2005 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 12/16/2005 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | |

| REFERRED TO | |
|---|---|

**Due Date :** 03/09/2006          **Referred to:** Person          **Name:** Welch, James

**Type of Information Requested :**
Please review the medical complaint concerning delayed surgery.

| DECISION | |
|---|---|

**Date Received :**

**Decision Date** : 09/27/2006          **Vote :** Uphold

**Comments**      :

I/M to be scheduled for biopsy. Portion of grievance that requests damage awards denied. This request is handled in civil litigation and is inappropriate for the grievance process.

H·8

DCC  **Delaware Correctional Center**
Smyrna Landing Road
**SMYRNA DE, 19977**
Phone No. 302-653-9261

**Date:** 10/30/2006

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** RUSH, DAVID R | | **SBI#** : 00173418 | **Institution** : DCC |
| **Grievance #** : 21535 | | **Grievance Date** : 12/16/2005 | **Category** : Individual |
| **Status** : Resolved | | **Resolution Status:** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | | **Incident Date** : 12/16/2005 | **Incident Time :** |
| **IGC** : Merson, Lise M | | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | |

### MGC

**Date Received :** 07/28/2006                    **Date of Recommendation:** 09/27/2006

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Uphold |
| Staff | | Gordon, Oshenka | Uphold |
| Staff | | Heddinger, Brenda | Uphold |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| | | |
|---|---|---|
| **Uphold : 3** | **Deny : 0** | **Abstain :1** |

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### RECOMMENDATION

Hearing held 9/27/2006.
Uphold: 4/28/06 consult report & reviewed 5/1/06.
Scheduled to see Dr. Durst nest available date.

Inmate verbally informed of MGC decision and appeal form was supplied.
Appeal due 10/4/2006.

H·10

# EXHIBIT L

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 03/13/2007

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** RUSH, DAVID R | **SBI#** : 00173418 | **Institution** : DCC |
| **Grievance #** : 44468 | **Grievance Date** : 05/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | **Resol. Date** : 03/13/2007 |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims I was diagnosed w/ an acutely painful torn rotator cuff (TRC) but merely received some 90 doses of wholly inadequate Motrin, which has since lapsed. Also my follow-up MRI results consultation was cancelled, but only after causing me to needlessly miss work and pay. No other follow up has been realized. This TRC condition is acutely painful and does adversely impair my normal daily functions.

**Remedy Requested** : That I receive adequate pain reliever; receive the MRI results consultation; and receive the/any warranted follow up treatment/ surgery and that I receive any warranted damages.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** YES

**Date Received by Medical Unit :** 06/06/2006

**Investigation Sent :** 06/06/2006

**Investigation Sent To** : Rodweller, Deborah

**Grievance Amount :**

**DCC  Delaware Correctional Center**
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 03/13/2007

## INFORMAL RESOLUTION

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** RUSH, DAVID R | **SBI#**           : 00173418 | **Institution**      : DCC |
| **Grievance #**      : 44468 | **Grievance Date** : 05/30/2006 | **Category**      : Individual |
| **Status**          : Resolved | **Resolution Status:** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date**    : 05/30/2006 | **Incident Time :** |
| **IGC**           : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | |

### INFORMAL RESOLUTION

**Investigator Name**   : Rodweller, Deborah                          **Date of Report** 06/06/2006

**Investigation Report :** mri done pt placed on dr line for evaluation. next level

**Reason for Referring:**

.

Offender's Signature:_____

Date            :_____

Witness (Officer)   :_____

L-2

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 03/13/2007

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** RUSH, DAVID R | **SBI#** : 00173418 | **Institution** : DCC |
| **Grievance #** : 44468 | **Grievance Date** : 05/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | |

### IGC

**Medical Provider:**                                     **Date Assigned**

**Comments:**


[x] **Forward to MGC**          [ ]   **Forward to Medical Provider**   [ ]   **Warden Notified**

[ ]  **Forward to RGC**          **Date Forwarded to MGC :**      06/15/2006

[ ] **Offender Signature Captured**    **Date Offender Signed**       :


**Page 3 of 6**

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 03/13/2007

## GRIEVANCE INFORMATION - Appeal

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name : RUSH, DAVID R** | **SBI#** | : 00173418 | **Institution** : DCC |
| **Grievance #** : 44468 | **Grievance Date** : 05/30/2006 | | **Category** : Individual |
| **Status** : Resolved | **Resolution Status** : Level 3 | | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/30/2006 | | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | | |

### APPEAL REQUEST

Appeal returned 8/10/2006 and accepted: Grievant requested that he receive the/any warranted follow-up treatment/surgery and that he receive any warranted damages. First, Grievant filed a sick call and EMG 21535 for his acutely painful lipomas and met with Dr. Durst. Durst advanced an alternate theory of Grievant's painful & limited range of motion in his right are as perhaps a torn rotator cuff. Durst's theory was tested via MRI and found incorrect, thus the issue of any warranted follow up treatment.... returns back to the original ailment of painful lipomas. Grievant has needlessly suffered nearly a year and despite an order for surgery by a doctor, CMS continues to refuse to provide the needed treatment. (See Affidavit items 2-13 at p.p. 1-2) (Note to BGO: Affidavit sent via state mail, to lengthy to enter into DACS.) In fact, it is clear that CMS intentionally creates an inordinate delay - via misdiagnoses, cancelled appointments, and deliberate refusal to provide Grievant access to the grievance procedure - generally give the run-around and does deny grievant the needed treatment. Furthermore, grievant inquired of CMS Rep Gail - if its not the theorized torn rotator cuff then we are back to the lipomas! Gail then improperly told grievant the MRI showed an arthritic shoulder, but Durst claimed a "Droopy Muscle". Grievant secured his MRI and it appears both claims were fabricated to mislead grievant. Moreover, Gail is not qualified to interpret the MRI. She is not.. Gail¿s attempt to further mislead grievant and the fact that CMS has continuously employed improper tactics for some ten months to deny him his needed surgery required (a) immediate correction (e.g. surgery to remove the painful lipomas and (b) provide damages to deter CMS's deliberate indifference to Grievant¿s known serious medical condition. Continues next section.

### REMEDY REQUEST

CMS representative Gail never replied about the original underlying painful lipomas or the doctor's order to have them removed despite the grievance requesting "warranted follow up treatment/ surgery". Grievant continues to suffer needlessly - pain, impairment of his normal daily functions, and an inability to promote good health via meaningful exercise that does pose and likely risk to his future health.

**Page 4 of 6**

L·4

DCC Delaware Correctional Center
Date: 03/13/2007
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE INFORMATION - Bureau Chief

### OFFENDER GRIEVANCE INFORMATION

| | |
|---|---|
| **Offender Name** : RUSH, DAVID R | **SBI#** : 00173418   **Institution** : DCC |
| **Grievance #** : 44468 | **Grievance Date** : 05/30/2006   **Category** : Individual |
| **Status** : Resolved | **Resolution Status** : Level 3   **Inmate Status** : |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/30/2006   **Incident Time** : |
| **IGC** : Merson, Lise M | **Housing Location** : Bldg W1, Tier D, Cell 16, Single |

### DECISION

**Decision Date:** 03/12/2007          **Vote** : Deny

**Comments** :
I concur with the BGO.

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

| | |
|---|---|
| **Offender Name** : RUSH, DAVID R | **SBI#** : 00173418   **Institution** : DCC |
| **Grievance #** : 44468 | **Grievance Date** : 05/30/2006   **Category** : Individual |
| **Status** : Resolved | **Resolution Status:** Level 3   **Inmate Status** : |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/30/2006   **Incident Time** : |
| **IGC** : Merson, Lise M | **Housing Location** : Bldg W1, Tier D, Cell 16, Single |

### MGC

**Date Received** : 06/15/2006          **Date of Recommendation:** 08/02/2006

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Uphold |
| Staff | | Heddinger, Brenda | Uphold |
| Staff | | Gordon, Oshenka | Uphold |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| | | |
|---|---|---|
| Uphold : 3 | Deny : 0 | Abstain :1 |

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### RECOMMENDATION

Hearing held Tuesday 1 August 2006.
Uphold: 7/21/06 Motrin for pain ordered - FU with pharmacy as to medication being available. Given MRI results by MD on

L-6

# EXHIBIT A

## AFFIDAVIT OF DAVID RUSH

1. I, David Rush, am the Affiant listed above and do depose and state the following:

2. On 08-18-2007, Affiant met with the Infectious Disease doctor, MacDonald, M.D. to discuss Affiant's Hepatitis C. (Hep C).

3. Affiant disclosed that he had experienced an acute outbreak of jaundice from 05-14-07 to 06-07-07, and that on 06-24-07 Affiant was rushed to the outside hospital for a near fatal emergency.

4. On 06-24-07, circa, Affiant's esophagus ruptured causing massive internal bleeding and Affiant, and had the laser surgery not been available, Rush would have likely died from the internal bleeding.

5. MacDonald reviewed Affiant's relevant medical records and stated that the ruptured esophagus was the direct result of Affiant's acutely damaged liver (Affiant's liver was determined to be at stage three of four stages of liver disease (i.e. acute liver cirrhosis) on or about January 22, 2007 by a specialist at Christina Hospital.

6. MacDonald explained that because Affiant's liver was significantly damaged and that only a small portion of it was functioning, that this is known to cause extreme "pressure" on the connected blood vessels and that this caused the vessels in Affiant's esophagus to rupture, which resulted in the severe internal bleeding.

7. MacDonald indicated that Affiant had evidently experienced internal bleeding for some time because Affiant's prior blood work showed "elevated protein levels."

8. Consequently, CMS knew of Affiant's stage three liver disease, knew of the possibility of related collateral injuries, and were aware of the warning signs of elevated protein levels and Affiant's preceding jaundice outbreak, but CMS did nothing.

9. MacDonald also noted that Affiant was taking Motrin pain relievers for his Lipoma growths and stated that this certain class of drugs should not be taken by anyone who suffers the level of liver damage Affiant suffers because it aggravates and overwhelms the already impaired/damaged liver functioning.

10. Affiant pointed out that he had been taking the Motrin for over a year at CMS doctors' direction despite the fact that Affiant had indicated on several occasions that the Motrin was wholly ineffective at managing the pain of his painful lipomas.

11. Consequently, CMS knew of Affiant's acutely impaired liver, knew that Motrin aggravated said damaged liver, knew that the Motrin was ineffective anyway, and still refused to remove the lipomas as an alternative to exposing Affiant to a significant threat to his health by overwhelming his impaired liver. Thus, CMS provided a knowingly substandard treatment for Affiant's lipomas that also endangered Affiant's preexisting condition (e.g. acute liver cirrhosis, etc.).

12. MacDonald also stated that he believed Affiant's liver disease may have elevated into the fourth and final stage, which would render the risk factors for treatment very high and may render Affiant ineligible for any Hep C treatments whatsoever.

13. Macdonald continued that if Affiant could secure an attestation from a doctor that Affiant would likely die within ninety days, then Affiant could petition for a Medical Release from prison so that he could be placed on a

1

A-1

liver transplant waiting list. MacDonald indicated he would provide a letter to support a medical release due to the premature death, because of this immanent likelihood.

14. MacDonald stated that the Interferon treatments were essentially a non-option due to the acute level of liver disease and the side effects inherent with the Interferon treatments, but that there was a new drug in the pipeline that may be a suitable alternative to the Interferon. However, this new drug would not be available for six months according to MacDonald.

15. Macdonald unequivocally stated that Affiant would not be placed on any liver transplant list while incarcerated, that he would have to be released.

16. Affiant challenged this statement by charging that had CMS not engaged in bad faith stalling techniques for an extended period of time and provided the Interferon treatments when Affiant requested them well over a year ago, then Affiant's liver would likely not have elevated into the fourth and final stage. Thus, CMS was the proximate cause of Affiant's failing liver and CMS was responsible for providing a liver transplant.

17. Macdonald stated: "Well, I'm not going to get into that, but you need to act now."

18. The above is the product of Affiant's personal experience and observations and is true and correct.

Sworn and Subscribed before me this __23rd__ day of August 2007.

David Rush

David Rush, SBI # 173418

W-1, D-16

1181 Paddock Rd.

Smyrna, DE 19977

Timothy J. Martin

Notary Public

Commission expires: June 19, 2008

2

A·2

AFFIDAVIT OF DAVIT RUSH

1. I, David Rush, am the Affidavit listed above and do state and depose the following in support of Rush v. CMS. Et al, CA. No. _____:

2. On 5/08/07 Affiant filed a Sick Call Request (SCR) for a Chronic-care Clinic (Clinic) to reorder needed thyroid meds (CC Meds) (Affiant's TSH range is over TEN and it is twice the level of the high-end range).

3. Affiant ran out of his CC Meds on 05-15-07 and as of _____ CMS failed to provide same.

4. Between 05-14-07 and 05-29-07 Affiant experienced an acute outbreak of Jaundice, in which Affiant's skin and eyes turned acutely yellow and easily observable.

5. On 05-25-07 Affiant met doctor Vandusen for a clinic, but Vandusen did not refer to Affiant's 05-08-07 SCR for CC Meds, nor did he comment on Affiant's Jaundice flare-up.

6. Vandusen did ask if Affiant had begun his Hep C treatments (Interferon), but Affiant stated he had not.

7. Vandusen then forcefully and accusatory manner demanded "Why haven't you begun the Interferon treatments!"

8. Affiant was shocked and stated what was clearly documented in his medical file by CMS:

   a. That Affiant was seen by a liver specialist on 01-22-07 at the Christiana Hospital and told that Affiant was being recommended that the Interferon treatments begin;

   b. That doctor McDonald had previously indicated that Affiant's thyroid numbers were high and that he needed to treat this problem before "they" could begin the Interferon treatments. McDonald created; however, a an erroneous link between Affiant's thyroid disease and his Hep C disease, in which the Hep C ostensibly could not be treated until the thyroid numbers were in line.

   c. That Affiant challenged McDonald's erroneous claim and also pointed out that the delay of over 18 months to begin treatments was unreasonable and inordinate, but McDonald was silent for several seconds and then stated, as if it was a valid excuse to deny Affiant needed treatment, "Well, you know there are over two-hundred people here waiting for those treatments."

   d. That on 02-27-07 (circa), however, Affiant met with Nurse Practitioner Ihuoma, and she stated that Affiant would begin his "Interferon treatments in about two weeks"; and

   e. That Affiant ran out of his CC thyroid Meds regardless and no Clinic or re-order has been provided. Also, Affiant needs pain meds for his acute Lipoma growths.

9. Vandusen concurred that Affiant's thyroid disease would not preclude the Interferon treatments and Vandusen added that it was "imperative to address your [Affiant's] condition, because this isn't something you can play around with." Vandusen qualified his statement by alerting Affiant that he had **"Stage 3 Liver Disease with fibrosis cirrhosis and fatty deposits" and that it was about to go to the final fourth stage in which viable treatment would be unlikely.**

10. **Vandusen asked Affiant if he was a heavy drinker –presumably to determine whether the source of his Stage 3 cirrhosis was caused by environmental factors or the inordinate delay- and Affiant stated that he never was much of a drinker, that it made him sick, and that he had nevertheless been incarcerated for the past twenty-five years without a drop of alcohol to drink.**

11. **Vandusen ordered Motrin, but failed to re-order his CC Meds, and merely stated that Affiant would be seen in about ninety days for his next Clinic [Hep C]. Vandusen never indicated if he was going to follow-up on Affiant's Interferon treatments or not.**

12. The above is true and correct and based on Affiant's personal experiences and present sense impression concurrently made during said experiences.

Sworn and Subscribed before me this ___7th___ day of June 2007.

David Rush, SBI # 173418

A-3

Timothy J. Mact
(Notary Public)
Commission expires: June 14, 2008

## AFFIDAVIT OF DAVID RUSH

1. I, David Rush, am the Affiant listed above and do depose and state the following in support of Rush v. Correctional Medical Services, Inc. et al. 07- ____ - ____.

2. On or about January 22, 2007, Affiant was sent out for an Outside Hospital run.

3. Affiant was sent to a liver specialist at the Christiana Hospital.

4. The doctor conducted blood lab-work and, after it was processed, he reviewed Affiant's blood labs and liver biopsy, etc. and specifically stated: "I see no reason not to begin your Interferon treatments. I'm gone to recommend you for the Interferon Treatments."

5. The above is true and correct, and is the product of Affiant's personal experience.

Sworn and Subscribed before me this __7th__ day of May 2007.

_David Rush_

David Rush, SBI #173418

_Timothy J. Mals_

(Notary Public)

Commission expires: June 14, 2008

A-4

# EXHIBIT C

# DELAWARE DEPARTMENT OF CORRECTIONS
# REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
# FACILITY: DELAWARE CORRECTIONAL CENTER
### This request is for (circle one):  MEDICAL  DENTAL  MENTAL HEALTH

DAVID RUSH

Name (Print)

W-1, D-16

Housing Location

1/31/1960

Date of Birth

00173 418

SBI Number.

1/30/06

Date Submitted

Complaint (What type of problem are you having)?  Mr. Rush received an initial

blood test that showed abnormally high "Peptides" sometime in 2004. This

sugests the existence of some form of Hepatitis. Mr. Rush specifically

requested the follow up tests however was rejected by the doctor. The doctor

stated that it was not necessary because there was no treatment, however, Mr.
Rush is aware of several people who have received treatment and wishes the same.

David Rush

Inmate Signature

1-30-2006

Date

### The below area is for medical use only. Please do not write any further.

S: Seen 1-5-06 by Doctor. No mention of above
Complaint. Will be scheduled

O:   Temp:_____   Pulse: _____   Resp: _____   B/P: _____   WT: _____

A:

P:

E:

JAN 3 1 2006

Provider Signature & Title

Date & Time

3/1/99 DE01
FORM#:
MED
263

D-1

## AFFIDAVIT OF DAVID RUSH

1. I David Rush am the Affiant listed above and do depose and say the following:

2. On or about March 01, 06, Affiant received blood work regarding a Sick Call request for his Hepatitis C.

3. On March 18, 06, Affiant visited with CMS's Viral/Infectious Disease Chronic-Care Doctor, Dr. Niaz (Dr. Niaz) regarding the Hep C, and Dr. Niaz ordered a "Load Count" and "Liver Biopsy."

4. On March 25, 06, Dr. Niaz recommended Interferon Treatments for the Hep C, however, Affiant expressed some concerns about symptoms/effects of said Interferon, and Dr. Niaz indicated that he would discuss these concerns with Affiant when the Load Count confirmed the need for treatment.

5. Affiant received more related blood work on March 30 & 31, 06.

6. Affiant was scheduled in with Dr. Niaz on April 1, 06 and again on April 8, 06, however, Dr. Niaz never reported in that day and the Chronic-care visits were cancelled.

7. On May 12, 06, Affiant was informed that his Load Count was upwards of four million "very high."

8. On May 30, 06, Affiant filed a Medical Grievance (MG) that complained of Dr. Niaz's failure to properly inform Affiant of the Interferon/drug symptoms, affects, and or prognoses etc., which Affiant requested so he could make an informed decision, and because of this failure, Affiant was forced to withdraw his tentative consent for said treatment until CMS provided the information.

9. Affiant is distressed because he knows of the need for the appropriate treatment and he wishes to proceed with it, but he nevertheless believes it is prudent to weigh the requested drug information in order to make an informed decision.

10. CMS is creating an inordinate and unnecessary delay in providing Affiant's needed treatment by refusing to correct its failure to provide the drug information and by failing to ensure that the position of Viral/Infectious Disease Chronic-care doctor is staffed adequately.

11. On June 03, 06, Affiant was ostensibly scheduled to visit with Dr. Niaz, but Affiant never received the posting (Inmate Activity Schedule) that morning and the bldg. C/O called for Affiant on the wrong tier. The C/O evidently and erroneously told the hospital that Affiant had refused when she failed to locate Affiant.

12. Affiant filed a Grievance on June 8, 06, regarding the events at item (10.) above, because through no fault of his own- he was denied a needed Chronic-care visit.

13. Affiant was scheduled in for another Chronic-care visit with Dr. Niaz on June 10, 06, however, the Bldg. Cpl. (who was working the desk), called the hospital and was told that Dr. Niaz was not in.

14. Affiant states that the above is true and correct to the best of his knowledge.

Signed and subscribed before me this _____29 7h_____ day of June 2006.

David Rush

Notary Public

D·2

David Rush
SBI #173418, W-1, D-16
1181 Paddock Rd.
Smyrna, DE 19977
August _18_, 2006

Deputy Warden Pierce
Re: Medical Grievance # 46223

Dear Sir:

Greetings, I/Grievant filed medical grievance (MG) #46223 (dated 5/30/06) regarding CMS deliberately denying and or creating an inordinate delay in providing Grievant with crucial drug treatment (Interferon) information. Grievant has a chronic disease (e.g. Hep C), of which requires immediate treatment and there is no legitimate medical or penological reason for CMS to create an inordinate delay of needed treatment. Moreover, CMS's deliberate delay was aggravated by the IGC McCreanor when he improperly rejected the MG ostensibly because Grievant requested "damages."

Consequently, Grievant filed a Direct Appeal to the Warden/Warden's Designee for McCreanor's adverse action (dated 7/01/06); however, no action has been taken thus far.

During the interim; however, Grievant filed a Reprisal Grievance (RG) # 46403 against McCreanor for his erroneous rejections of medical grievances, and you found Grievant's claims to have merit. Consequently, several of Grievant's improperly rejected MG(s) were resurrected. The matter is settled regarding erroneous rejections based on any requests for "damages." Therefore, this finding equally applies to MG #46223 and it is appropriate to act on the 7/01/06 Direct Appeal for this MG also.

Thank you for your time and attention with this matter.

Respectfully,

David Rush

C.c. Sheryl Milstead-Rush, Esq.
C.c. Mr. Altman, Ombudsman, CMS

D-3

David Rush
SBI #173418, W-1, D-16
1181 Paddock Rd.
Smyrna, DE 19977
October 6, 2006

Mr. Altman, CMS Ombudsman
RE: Hepatitis C Drug Treatment Information/Consent to Administer Treatment Post Haste

Mr. Altman:

Greetings, I was re-diagnosed with Hep C about a year ago, and I was told that treatment would consist of Interferon. It was ordered subsequently by the viral infectious doctor; however, I requested drug information (reaction/symptoms, etc) concerning the Interferon drug. CMS failed to provide the necessary information for me to make an informed decision. Consequently, I had filed a medical grievance (MG#_____) requesting same. I noted in it that CMS failed to provide the necessary drug treatment consultation absent any legitimate medical factor, and of which resulted in creating an unnecessary inordinate delay in receiving the needed life saving treatment. Reluctantly, I was forced to temporarily withdraw my consent for Interferon treatment until CMS complied with its duty to provide the requisite drug consultation. Evidently CMS saw this as an opportunity to avoid providing the necessary albeit costly treatment to me because nearly ten months had passed since I filed the MG requesting said information; however, CMS refused to provide the information.

In fact, I was scheduled several times for the viral infectious doctor, but they turned out to be ghost doctor's visits and again the information was not provided. Also, when I attended the first MG hearing –some ten months later- Mrs. Rodweller assured me that I would be scheduled in for the requisite drug consultation and pressured me to "sign-off" on the MG. I refused because I know that CMS is good at making promises but bad at actually realizing them. True to form, CMS failed to conduct the consultation as promised and I attended the second "Formal Hearing" (9/27/06) only to receive another promise by Mrs. Eller that I would be scheduled within a week to see the "Interferon Nurse." This raises several questions:

Who is this Interferon nurse? Is she even qualified to provide the requisite consultation? If all it took was a visit with this interferon nurse to comply with and provide a drug consultation, then why was I delayed for ten months? Why was I repeatedly scheduled to see the Infectious Viral disease doctor for the consultation –albeit cancelled- if all that was required was this nurse?

In any event, there is no legitimate medical reason to delay providing necessary drug consultations for some ten months or more, there is no legitimate medical reason in forcing one to withdraw consent for needed life saving treatment, and there is no legitimate medical reason to force one to run the gauntlet of ghost doctor's visits and a convoluted medical grievance system that is without integrity. It is clear to me that CMS is employed in a campaign of psychological torture designed to frustrate the patient into foregoing needed treatment. This is outrageous.

Consequently, frustrated and concerned for my health, I wrote Roche Pharmaceuticals, on the same date of the formal grievance hearing, and requested the same drug information I had requested from CMS some ten months earlier. Unlike CMS, Roche received my request (via ground mail) and was able to promptly provide the sought after information in a mere five days! Roche provided the information and satisfied my concerns well before CMS and only after one request! CMS deliberately failed repeatedly despite ample opportunity. Subsequently, I was scheduled in to see this so-called Interferon Nurse on 10/04/06 and I promptly announced that I had received the drug information. And in that regard, the "problem was solved," I did not require her questionable drug consultation because I had on my own institutive sought and received from Roche an alternate and legitimate source of Interferon treatment information. Accordingly, now that I have been able to provide my own drug consultation, I expect that CMS will have no excuse to continue to delay/avoid providing the needed treatment I require for my serious medical condition. I request that you follow up on this matter and provide me with confirmation that these treatments are indeed proceeding without further unneeded delay.

Thank you for your time and consideration with this ongoing matter.

David Rush

D·4

David Rush
SBI #173418, W-1, D-16
1181 Paddock Rd.
Smyrna, DE 19977
November 21, 2006

Mr. Altman, CMS Ombudsman
Re: Treatment Plan for Chronic Disease Hepatitis C

Dear Mr. Altman:

    Greetings. I am writing you in the hope of determining what, if any, treatment plan has been determined for my chronic condition because it appears that my treatment plan has again been altered with the result of creating an inordinate delay: A delay that causes likely and substantial future irreparable damage to my internal organs.

    For example, nearly a year has elapsed since my diagnoses (and since the doctor's announcement that I would be receiving the standard requisite Interferon treatments); however, it took that year for me to receive the necessary drug interaction/symptoms information, and that was not even supplied by CMS, but by the pharmaceutical company Roche. I had grieved the matter through out, but finally received the drug information and no longer required CMS for it; nevertheless, I no sooner requested the Interferon treatments when another stalling technique appears to have developed.

    Indeed, I met with Dr. Niaz –who had twice ordered a liver biopsy- and he appeared to suggest that my treatment plan had been altered. It was difficult to understand Dr. Niaz because he was ambiguous, cryptic, and his statements did not make any sense. Actually, his statements were suspect too for several reasons. For example, he always inquires –at every visit that he has actually showed up to meet with me- what I was there for -as if he had not reviewed my file, etc. My visit with him on 11/17/06 was no different, but then Dr. Niaz inquired whether I had had the liver biopsy. I had not, was my response and Dr. Niaz promptly offered that "they" did not provide the liver biopsy because of my thin blood.

    Whether he actually knew why the biopsy was performed is suspect because he had not reviewed my file, did not know, absent me, that the biopsy was not performed as yet, but continued to speculate why it had not been performed. And who are "they"? Dr. Niaz is the doctor who ordered the biopsy, so who is this infamous "they" that he states is responsible for overriding his –the doctor's- order? Also, Dr. Niaz continued his ad hoc speculation and stated for the first time that I would not be receiving the Interferon treatments and he ordered another drug. It is unclear whether the alternate drug is to directly treat my Hep C or whether it is treat the so-called thin blood, so that I may soon begin the Interferon treatments. I do not know what the treatment plan is and I would like to know what it is, what drugs I will be required to take, and what they are for. This ambiguity only serves to create stiff further delay or denial in my receiving the necessary treatment and does risk tangible irreparable injury to my person. Besides I was led to believe by CMS that a certain course was to begin and now I have no idea as to the treatment I am to receive.

    Moreover, I grieved the matter of CMS creating an inordinate delay in providing the necessary treatment, yet CMS appears to merely continue its practice unabated. It is unacceptable.

    I would appreciate you looking into this matter and helping me to determine what exactly to expect of the proposed treatment plan.

Thank you,

*David Rush*
David Rush

D-5



David A. Rush  SBI 173418
W-1 D-16
1181 Paddock Road
Smyrna, DE 19977

1 December 2006

Dear Mr. Rush,

I received your letter dated 21 November 2006 regarding your Hepatitis C treatment. The delay in your treatment is not the result of the "stalling technique" that you allege in your letter.      I apologize for the fact that Dr Niaz did not clearly communicate the reason for the delay in your treatment. The blood test you received on 18 November 2006 indicated that you had a low platelet count.     Low platelets are a contraindication to the combination Interferon/Ribovirin treatment since this treatment can potentially lower the platelet count even further. Starting the treatment without exploring how your body may respond could potentially place you at risk from the treatment.

The "they" that you refer to in your letter are the Utilization and Management Department at our corporate offices.      These specialists to ensure that timely and appropriate care is being given by reviewing each request for outside care.      They physician must meet certain protocols before these outside evaluations can be approved. They review the information forwarded by the physician to ensure that these protocols are followed.    Since the treatment of Hepatitis C requires a liver biopsy, the physician must send all appropriate lab testing for the review.  The biopsy was delayed because of the platelet count; the steps in the process exist for the safety of the patient and were appropriately followed resulting in the delay of the liver biopsy pending the evaluation by a hematologist (specialist in blood disorders).

A complete treatment plan cannot yet be provided as all of the information is not available.  Following your evaluation by the hematologist and completion of any testing he/she should determine is appropriate, the medical staff will be able to provide you a more complete picture of your diagnosis and potential treatments.

Please write to me if you experience any further problems.

Your Partner in Healthcare,

Scott S. Altman
Quality Assurance Monitor
Correctional Medical Services

D-6

CC:  Warden Thomas Carroll

David Rush, SBI # 173418
1181 Paddock Rd.
Smyrna, DE 19977

Mr. S. Altman, CMS Del. Regional Offices
Re: Inordinate Delay in Receiving Medical Care Known by CMS to be needed

Altman:

Greetings. I have several serious medical conditions that require immediate medical attention:
a. Acute late-stage Lipoma growths, which were referred for excision and categorized as "chronic" more than a year ago;
b. Chronic Hepatitis C, which has caused Stage 3 Liver Disease; and
c. Hypothyroid Disease, which requires consistent and timely medications.

CMS, however, continues to create an inordinate delay in providing the needed care and or completely denies it. Indeed, CMS has morphed the standard regarding the Lipomas and ignored the latest request I made for care in early May 2007. CMS failed to counsel me on my acute hypothyroidism despite my TSH numbers being over 10 and has subsequently failed to renew the needed chronic-care meds despite my request on May 8, 2007 for a Clinic, etc. CMS has repeatedly used erroneous pretexts to deny me Interferon treatments despite the knowledge that this inordinate delay is causing substantial permanent damage to my liver. Moreover, my liver is about to mover into the forth and final stage of cirrhosis. All of these denials/delays are in conflict with any valid medical criteria. Below outlines the Hepatitis Clinic:

1. On 5-08-07 Affiant submitted a Sick Call Request (SCR) to be scheduled for a Chronic-care Clinic (Clinic) to reorder Affiant's needed chronic-care thyroid meds. (CC Meds) (Affiant's thyroid condition is acute with a plus ten TSH level – twice the high-end of the TSH range).
2. Affiant ran out of his CC Meds 05-15-07.
3. On 05-25-07 Affiant was seen by doctor Vandusen for a Clinic, but he did not refer to the 05-08-07 SCR for CC Meds.
4. Vandusen asked Affiant whether his Interferon treatments had begun and Affiant replied in the negative.
5. Vandusen then forcefully asked Affiant "Why haven't you begun the Interferon treatments!" Vandusen emphasized "**You**" as if Affiant created the impediment to the needed treatment.
6. Affiant was shocked and explained what was already clearly written in Affiant's medical file:
   (a) That Affiant was seen by a liver specialist on 01-22-07 at the Christiana Hospital and told that he is recommended for the Interferon treatment;
   (b) On or about 01-26-07 Affiant met with Nurse Practitioner, Ihuoma, and she stated that the Interferon treatments would commence in about two weeks (i.e. February 2007);
   (c) That doctor McDonald had previously indicated that Affiant's thyroid numbers were off and that he needed to treat this problem before "they" could begin the Interferon treatments. McDonald created an erroneous link between the Affiant's thyroid condition and his Hep C disease, in which the Hep C allegedly could not be treated until and unless the hypothyroidism was brought in line; and
   (d) That Affiant ran out of his CC thyroid meds and his needed Motrin, and no Interferon ever began.
7. Vandusen concurred that Affiant's hypothyroidism would not have any bearing on nor would it preclude the commencement of the Interferon treatments, that McDonald's claim was erroneous.
8. Vandusen stated that it was "imperative to address your [Affiant's] condition, because this isn't something you can play around with." Vandusen qualified this by alerting Affiant that his liver was already at "**Stage 3 Liver Disease with fibrosis cirrhosis and fatty deposits,**" and that it was ready to move to the fourth and final stage in which viable treatment would be precluded.
9. Vandusen asked Affiant if he was a heavy drinker –presumably to determine whether Affiant's stage 3 cirrhosis was caused by an environmental factor instead of the inordinate delay in receiving Interferon treatments- but Affiant informed Vandusen that he was never much of a drinker and, in any event, he had been incarcerated for some twenty-five years without a drop of alcohol whatsoever.
10. Vandusen ordered Motrin, but failed to reorder any thyroid meds, and merely indicated that he would see Affiant again in about ninety days. Vandusen did not indicate whether he was going to follow up on Affiant's needed Hep C. treatments.

I have completed the medical grievance process regarding the Lipomas and the Hep C, I have submitted formal Sick Call requests, and I have submitted several letters of complaint and requests for medical care to CMS Offices, and I have repeatedly seen by doctors who have observed my easily observable serious medical conditions, etc but none of my efforts have persuaded CMS to provide me the care CMS knows I require.

In closing, I do not need excuses or denials about why the care is being delayed or denied. What is needed is a genuine effort to follow up on these matters, and I request that the appropriate care is provided post haste. This matter is ripe for litigation and I am troubled that CMS would force me to seek redress in the courts instead of providing the medical care it is obligated to provide.

David Rush                    D.7                    6-1-07
David Rush                                          DATE

**DEPARTMENT OF CORRECTION**
Bureau of Prisons
245 McKee Road
Dover, Delaware 19904

December/14/2007

W, D-16

Inmate RUSH DAVID R
SBI # 00173418
DCC  Delaware Correctional Center
SMYRNA DE, 19977

Dear DAVID RUSH:

We have reviewed your Grievance Case # 46223 dated 05/30/2006.

Based upon the documentation presented for our review, we deny your appeal request.

Accordingly, there is no further issue to mediate nor Outside Review necessary as provided by
BOP Procedure 4.4 entitled "Inmate Grievance Procedure", Level III appeals.

Sincerely,

Richard Kearney
Bureau Chief

D-8

**DCC** Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** RUSH, DAVID R | **SBI#** : 00173418 | **Institution** : DCC |
| **Grievance #** : 46223 | **Grievance Date** : 05/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status :** Level 3 | **Resol. Date** : 02/16/2007 |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** deliberate indifference to my known serious medical condition (DI) (e.g. Hep C) by CMS creating an inordinate delay in providing me with crucial infofrmation of Interfeson treatments which is necessary for me to make an informed consent, and by logical extension, consequently delaying the needed treatment for non-medical reasons. For example, I submitted a sick call slip for my Hep C on January 30, 2006 and had blood work fofr a viral load count March 1 and March 30, 2006 (e.g. VC was in excess of 4 million). I saw the Viral/Infectious Disease Doctor Dr. _____ (Asian or Pakastani descent) on March 18 and March 25, 2006. On March 25, 2006 the doctor recommended Interfeson Treatment and inquired whether I wanted such treatments. I replied in the affirmative but stated I needed medication information (i.e. side effects, potential results both pro and con, and whether recovery rates are statistically significant to warrant enduring negative side effects). The doctor stated that I would be rescheduled for the medication consultation. I was subsequently scheduled to see the doctor on April 1 and again on April 8, 2006. The doctor failed to show and the consultations were cancelled. I have not received the information regarding the Interfeson Treatment. I have not been able to make an informed decision and CMS has failed to ensure that an authorized doctor be on staff ro provide the prequisite information however, not due to legitimate medical factors, but due to staffing/personnel matters.

**Remedy Requested** : Unfortunately, because CMS has employed a stratergy of scheduling ghost doctor visits and failed to provide the requested information, I must withdraw my consent for the Interfeson Treatment until this matter is satisfied. However, this inordinate delay is unacceptable because it exposes me to permanent injury and a likely substantial risk for future permanent injury and does constitute DI. Also provide any applicable damages and if consented to, timely treatment.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance :** YES | **Date Received by Medical Unit :** 06/16/2006 |
| **Investigation Sent :** 06/16/2006 | **Investigation Sent To** : Rodweller, Deborah |
| **Grievance Amount :** | |

D - 9

DCC Delaware Correctional Center
Date: 02/16/2007
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| **Offender Name :** RUSH, DAVID R | **SBI#** : 00173418 | **Institution** : DCC |
| **Grievance #** : 46223 | **Grievance Date** : 05/30/2006 | **Category** : Individual |
| **Status** : Resolved | **Resolution Status:** Level 3 | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 05/30/2006 | **Incident Time :** |
| **IGC** : Merson, Lise M | **Housing Location :** Bldg W1, Tier D, Cell 16, Single | |

| INFORMAL RESOLUTION | |
|---|---|

**Investigator Name** : Rodweller, Deborah                    **Date of Report** 07/13/2006

**Investigation Report :** placed on Dr.Niaz list to be examined. Will have infection control nurse do education with patient on Hep C once her class is completed. Inmate wants to wait to make sure care is done

**Reason for Referring:**


**Investigator Name** : Rodweller, Deborah                    **Date of Report** 08/28/2006

**Investigation Report :**

**Reason for Referring:**


Offender's Signature:_____

Date                :_____

Witness (Officer)   :_____

**Page 2 of 7**

D - 10

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 02/16/2007

## GRIEVANCE INFORMATION - MGC

### OFFENDER GRIEVANCE INFORMATION

**Offender Name :** RUSH, DAVID R

**SBI#** : 00173418

**Institution** : DCC

**Grievance #** : 46223

**Grievance Date** : 05/30/2006

**Category** : Individual

**Status** : Resolved

**Resolution Status:** Level 3

**Inmate Status :**

**Grievance Type:** Health Issue (Medical)

**Incident Date** : 05/30/2006

**Inmate Time :**

**IGC** : Merson, Lise M

**Housing Location :** Bldg W1, Tier D, Cell 16, Single

### MGC

**Date Received :** 08/31/2006

**Date of Recommendation:** 09/27/2006

### GRIEVANCE COMMITTEE MEMBERS

| Person Type | SBI # | Name | Vote |
|---|---|---|---|
| Staff | | Eller, Gail | Uphold |
| Staff | | Gordon, Oshenka | Uphold |
| Staff | | Heddinger, Brenda | Uphold |
| Staff | | McCreanor, Michael | Abstain |

### VOTE COUNT

| Uphold : 3 | Deny : 0 | Abstain : 1 |
|---|---|---|

### TIE BREAKER

| Person Type | SBI # | Name | Vote |
|---|---|---|---|

### RECOMMENDATION

Hearing held 9/27/2006.
Uphold: Schedule inmate too see inf control nurse for info on Interferon treatment within one wk.

Inmate verbally informed of MGC decision and appeal form was supplied.
Appeal due 10/4/2006.

D-15

EXHIBIT E

Received 10-25-06



David A. Rush   SBI 173418
W-1 D-16
1181 Paddock Road
Smyrna, DE 19977

20 October 2006

Dear Mr. Rush,

I received your letter regarding your concerns on 13 October 2006. A review of your record indicates you were first diagnosed with Hepatitis C on 1 Mar 2006.  The Genotype and liver function levels were obtained on 3/31/06.  Additional liver function tests were obtained on 5/3, 5/15 and 9/15/06, which showed that your liver function tests were not increasing but decreasing.  I also noted you saw Dr Niaz on 10/14/06 and he complete a request for a liver biopsy which is another step in the treatment of this condition.   I cannot comment on why it took the DCC nursing staff so long to answer your concerns about Interferon and I do apologize.   If you should have difficulty obtaining this, or any other information in the future, please write to me directly so I can expedite this process.  I also noted you had refused a sick call visit on 1/4/06; I am assuming this was for the Interferon counseling that you had already received.

Please write to me if you experience any further problems.

Your Partner in Healthcare,

Scott S. Altman
Quality Assurance Monitor
Correctional Medical Services

CC:  Warden Thomas Carroll