IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

DAVID RUSH, )
)
v. ) C.A. 07-514- SLR
CORRECTIONAL MEDICAL SERVICES, Inc, et al, )
    Defendants.

## MEMORANDUM FOR THE APPOINTMENT OF COUNSEL

Statement of the Case:

    This is a civil rights case filed under 42 U.S.C. sections 1983 and 1997, by a state prisoner and he asserts claims that defendants committed several distinct acts of deliberate indifference to Rush's objectively known serious medical needs in violation of his constitutional rights: specifically the Eighth and Fourteenth Amendment's ban on cruel and unusual punishment clause; deliberate retaliation against Rush for his exercise of his protected rights in violation of the Fifth and Fourteenth Amendment's due process clause; and violations of the First Amendment's freedom of speech clause. Rush seeks damages as to all his claims, declaratory judgment, and injunctive relief for the needed medical care he requires.

Statement of Facts:

    As stated in the complaint, Rush suffers from several serious medical diseases/conditions that require adequate, consistent, and or immediate medical care:

    I. Acute late-stage Lipomas of which will not heal on their own and require immediate excision, and possible reconstructive surgery and physical therapy, and pain medications. (See D.I. ____);

    II. Painful cist/degenerative right shoulder muscle, of which will not heal on its own and requires immediate medical care and possible physical therapy and pain medications. (Id ); and

    III. Chronic Hepatitis C, of which requires immediate medication and standard timely and consistent Hep C virus protocol (Id ).

I. ACUTE LATE-STAGE LIPOMAS:

    Rush's acutely painful later-stage Lipoma growths were diagnosed by two doctors as "chronic" and consequently require excision within two to three weeks; however, Rush has been denied the known needed medical care for nearly two years. This condition will not heal on its own and left untreated will only further cause Rush unnecessary pain, suffering, and substantial impairment of his normal daily functions. Also, because the growths are progressive and because they cause damage to Rush's muscles, nerves, blood vessels, and surrounding skin tissue, Rush suffers a substantial current risk of disfigurement and a substantial and likely risk of further future permanent injury (Item I. above is incorporated herein as is his TRO/PI filing and attached exhibits of medical records).

    Indeed, Rush had been diagnosed as needing the growths surgically removed, but not once but twice did CMS erroneously morphed the ostensible medical criteria for their removal. First, they were recognized as the

serious medical condition that they obviously were, but some eighteen months later, Altman incredibly states that Rush had not recently filed any Sick Call Request. This was despite the prior diagnosis and despite Altman already stating that Rush's claim had merit. Then doctor McDonald brushed off Rush assuming that Rush did not suffer from muscle, nerve, and blood vessel damage, and McDonald stated that the Lipoma growths are not normally removed unless they cause damage to muscle, nerve, and or blood vessels But of course, Rush produced the very example of such damage, and McDonald still disregarded Rush's reasonable pleas for medical care.

The obscene pattern of deliberate indifference/gross reckless disregard for this obvious serious condition is evidenced by CMS's employment of arbitrary and capricious ever morphing ostensible medical standards and or obstacle to care. All of CMS's acts required a conscious decision and it suggests a deliberate/subjective denial of needed medical care. Indeed, any layman could infer the need for Rush to receive immediate medical care.

II. <u>PAINFUL CIST/DEGENERATIVE RIGHT SHOULDER MUSCLE</u>:

Rush suffers from an acutely painful degenerative shoulder condition that will not heal on its own, and that causes him severe pain and significant impairment of mobility and range of motion. Indeed, Rush's right arm is nearly useless to him and this aggravates the impairment he suffers from the Lipoma growths on his right arm and his left arm. CMS is well aware of the serious medical condition by virtue of an MRI, however, CMS engages in disinformation and misstatements of fact in an effort to conceal from Rush the actual damage and or an appropriate diagnosis of the shoulder condition. Rush requires an outside objective and unbiased medical diagnosis from a shoulder specialist and any informed professional medical judgment as to the appropriate treatment and or physical therapy, etc. (Item II. above is incorporated herein as is his TRO/PI filing and attached exhibits of medical records).

III. <u>CHRONIC HEPITITUS C</u>:

It is undisputable the serious and fatal nature of the Hep C virus. Rush suffers a chronic form of Hep C and he has already suffered significant and permanent damage to his liver and other internal organs. Rush is also in jeopardy of being disqualified from receiving the needed and life saving treatments, and or he also faces an ever decreasing ability that the treatments will be successful due to high risk factors. (* As of August 2007, CMS as notified that Rush has indeed past the point of now return and is disqualified from receiving Hep C treatment due to the extensive damage he has already experienced). Moreover, these risk factors increase with every day of delay that CMS causes Rush to needlessly suffer. (Items at III. are incorporated herein as is his TRO/PI filing and attached exhibits of medical records).

I. <u>Argument</u>

THE COURT SHOULD APPOINT COUNSEL FOR THE PLAINTIFF.

II. <u>Standard of Review</u>

Granted, a plaintiff has no constitutional or statutory right to the appointment of counsel in a civil case. See <u>Parham v. Johnson</u>, 126 F.3d 454, 456-57 (3d Cir. 1997); <u>Tabron v. Grace</u>, 6 F.3d 147, 153-54 (3d Cir. 1993).

2

However, under certain circumstances, the court may in its discretion appoint an attorney to represent an indigent civil litigant. See 28 U.S.C. sections 1915(e) (1). In deciding whether to appoint counsel for an indigent pro se plaintiff, the Third Circuit articulated the standard for evaluation as follows:

1. Whether the claim has some arguable merit in fact and law. Parham, supra, at 457 (citing Tabron, 6 F.3d at 157);
2. Whether the plaintiff has the ability to present his own case;
3. Whether the legal issues are too complex for a pro se plaintiff;
4. Whether the testimony of an expert witness will be necessary;
5. Whether extensive factual investigation is necessary to effectively litigate the case and plaintiff's ability to pursue such an investigation;
6. Whether and to what degree the case will turn on credibility;
7. Whether plaintiff can attain and afford counsel on his own behalf. See Parham, supra, at 457-58 (citing Tabron, 6 F.3d at 155-56, and 157 n. 5).

This list is illustrative and not exhaustive. Id at 458. Accordingly, Rush have additional factors that warrant the Court's consideration:

8. Whether settlement negotiations are viable and likely to resolve the litigation and whether plaintiff requires counsel's assistance to realize meaningful settlement negotiations.

### III. Application of the Case Facts to the Parham Factors

1. Rush's complaint contains factual and legal merit: His allegations, if proved, would clearly establish a constitutional violation.

First, for a plaintiff to state a violation of the Eighth Amendment's right to adequate health care, plaintiff "must allege acts or omissions sufficiently harmful to evince deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 106 (1976); accord White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). A plaintiff must demonstrate: (1) that he/she had an objectively serious medical need, and (2) that defendants were aware of this need (i.e. subjective knowledge), but were deliberately indifferent to it. See West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978); Also, Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

As to the first prong –objectively serious medical need- Rush has pleaded facts that sufficiently establish several objective serious medical needs.

For example, see the following:

A. As pleaded, Rush's, acutely painful later-stage Lipoma growths were diagnosed by two doctors as "chronic" and consequently require excision within two to three weeks; however, Rush has been denied the known needed medical care for nearly two years. Rush is exposed to undue suffering and a likely and substantial risk of future harm/ residual injury; and impairs his normal daily functions;

B. As pleaded, Rush suffers from an acutely painful degenerative shoulder condition that will not heal on its own, and that causes him severe pain and significant impairment of mobility and range of motion. He is exposed to undue suffering and a likely and substantial risk of future harm/ residual injury; and impairs his normal daily functions;

3

C. As pleaded, Rush's suffers a serious and fatal disease: Hep C virus. Rush suffers a chronic form of Hep C and he has already suffered significant and permanent damage to his liver and other internal organs. Rush is also in jeopardy of being disqualified from receiving the needed and life saving treatments, and or he also faces an ever decreasing ability that the treatments will be successful due to high risk factors. Thus denial of needed treatment causes Rush to be exposed to undue suffering and a likely and substantial risk of future harm/ residual injury and or significant risk of premature death.

Indeed, all of Rush's diseases/conditions are objectively serious; thus mandate the minimally adequate medical care. See Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994). Moreover, Rush alleged that his acute chronic symptoms and real residual injuries from his serious medical conditions are so obviously serious that even a lay person could infer the need for adequate medical care. See Foelker v. Outagamie County, 394 F.3d 510-512 & 513 (7th Cir. 2005). Also, Rush pleaded that two of the three conditions had been diagnosed by a doctor as requiring medical care –thus are also considered objectively serious medical needs under this alternate legal theory. See Estelle, supra, 429 U.S. at 105. The shoulder has intentionally been misdiagnosed and the classic symptoms disclosed by the MRI were intentionally disregarded. Additionally, Rush pleaded that he faces a likely and substantial risk of both current and future tangible physical permanent injury due to the nature of his several serious medical diseases/conditions. See Valentine v. Beyer, 850 F.2d 951, 955 (3d Cir 1988).

As to the second prong: that defendants were subjectively aware of Rush's needs, but that they were deliberately indifferent to them and or that they disregarded them with gross recklessness. Rush's complaint equally satisfies this prong also. For example, Rush establishes facts that defendants intentionally and or with gross reckless disregard committed -but not limited to- the following acts:

A. Intentionally interfered with medical treatment that had been prescribed by a doctor, such as by creating arbitrary and capricious and ever morphing medical criteria, and by disregarding Rush's consistent complaints about the acute pain, significant impairment of his normal daily functions, and the significant impairment of his range, mobility, and strength. (Jackson v. F.C.M.S., 380 F.Supp 387 (D. Del 2005); Spruill v. Gillis, 372 F.3d 218, 236 (2004); and Estelle, supra);

B. By creating a continuous pattern of inordinate delays and or by refusing to correct said refusal s to render the known needed medical care despite the obvious need to do so. Jackson, supra.

C. By employing policies that fail to meet the immediate/emergency and obvious needs of Rush, such as regarding his acutely painful Lipoma growths and Hep C. See Natale v. Camden County Corr' Facility, 318 F.3d 575, 583 (3d Cir 2003); See also Martin v. Tyson, 845 F.2d 1451, 1457 (7th Cir. 1988) (lengthy delay in providing dental [medical] care or one that results in serious pain or permanent damage violates constitution). And Ramos v. Lamn, 639 F.2d 559, 576 (10 th Cir. 1980);

D. By denying needed/prescribed medications that resulted in undue pain or suffering or in residual injury, such as those caused by Rush's untreated/under treated Lipoma growths and Hep C. See Monmouth

4

County Corr. Inst. Inmates v. Fauver, 479 F. Supp 326, 347 (3d Cir 1987); Pace v. Fauver, 479 F. Supp. 456, 458 (D. N.J. 1979);

E. By denying treatment that result in permanent injury, such as untreated/under treated Lipoma growths and Hep C. See White v. Napoleon, 897 F.2d 103, 111 (3d Cir 1990); Estelle, supra, Spruill; supra,; Monmouth County, supra; and Martin, supra;

F. By intentionally employing less efficacious treatments, however, for non-medical factors, such as budgetary restrictions and or a custom/policy of cost-avoidance, which may be inferred by CMS's conduct regarding its refusal to provide the known needed care for Rush's Lipoma growths and his chronic Hep C. All of which exposes Rush to undue pain and suffering and or permanent injury. West v. Keve, 571 F.2d 158 (3d Cir 1978); Williams v. Vincent, 508 F.2d 541 (2d Cir 1974); Tillery v. Owens, 719 F.Supp 1256, 1287 (W.D. PA 1989) Affirmed 907 F.2d 418 (3d Cir 1990); and Durma v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir 1993); See also Fields v. Gander, 734 F.2d 1313, 1315 (8th Cir. 1984) (three-week delay accompanied by swelling and pain states a cause of action).

G. By intentionally employing a custom/policy of blanket denials of certain needed treatments for non-medical factors, such as refusal to provide emergency/routine excision of Rush's acutely painful Lipoma growths and Hep C, and by refusing to provide and or creating an inordinate delay in providing surgical removal despite the obvious need to do so. (West, supra, Tillery, supra at 1287); and

H. By intentionally attempting to inflict harm upon Rush and or by doing so through gross reckless disregard to obvious painful/suffering conditions, which CMS was placed on repeated and adequate notice, and is evinced -in the complaint- by CMS's various acts of malicious, hostile, sadistic, and or retaliatory behavior towards Rush. (Spruill, supra at 231).

Consequently, Rush has properly alleged and properly supported with facts the essential elements of an Eighth Amendment claim for deliberate indifference against defendants: therefore, Rush's claims have merit in both fact and law and he has satisfied the threshold question of Parham. It is appropriate for the Court to consider the remaining Parham factors.

    2. Rush's ability to present his case is greatly impaired by his medical conditions, and it is further impeded by a gross lack of meaningful access to the Law Library. First, it is admitted that Rush is fairly articulate; however, he has no legal or procedural knowledge whatsoever, and does not understand the deliberate indifference standard. He was only able to file his complaint and these initial motions because another assisted him with drafting and filing them, but that assistance is no longer available to Rush and he faces certain prejudice if he does not receive professional help prosecuting his meritorious claims. Moreover, being fairly articulate does not equate to having a sufficient ability to present his case without facing prejudice due to other compelling impairments. For example, Rush's thyroid disease causes him to suffer the following chronic symptoms:

    a) Acute chronic fatigue, which impairs his physical and mental facilities (e.g. low energy & difficulty with concentration and focus);

    b) Acute mental and emotional distress; and

      c) Acute depression and anxiety, etc. (Rush's current Thyroid Stimulating Hormone (TSH) is at twice the highest level for having a thyroid condition).

Consequently, Rush's chronic-fatigue has adversely effected his work and inmate program performance. These incidents are embarrassing and detrimental. Moreover, Rush's resulting and related depression is so severe that it is common for him to feel absolutely overwhelmed as he approaches any task –let alone the challenging tasks associated with this complex/extensive case. Indeed, Rush is often paralyzed with inaction from depression and anxiety for extended periods.

      In addition, Rush's ability to prosecute his case is impaired by woefully insufficient access to the Compound's Law Library. For example, inmate workers/programmers only have access to the Law Library on, at best, two sessions per week (scheduled 7:00pm to 8:40 pm) however, in reality it works out to, at best, 1 ½ hours per session for a total of three hours a week. Even then it is not uncommon to be bumped from one of the sessions due to space shortages. Thus, Rush can hope to receive no more than a total three hours per week of access to legal materials. Absent this three hours maximum access to legal research materials, etc. DCC prison does not provide any mail ordering system or photocopies of legal materials/cases/ rules etc. for compound inmates (Rush is both a worker and compound resident). Thus if one needs to brief a court case, he must spend his limited and valuable 1 ½ hours of Law Library time –per session- taking long hand notes. No member of the bar could be expected to prosecute a complicated civil case with a mere three hours a week access to legal materials.
Rush, however, is not a member of the bar but is a pro se litigant and he certainly cannot be expected to do more than a member of the bar could do. Indeed, Rush should not be forced to experience likely prejudice in his case before action is taken. He does not wish to experience unnecessary litigation (e.g. appeals, etc), and he is not interested in filing additional claims against the Department of Corrections for any denial of access to the courts that will likely arise when Rush experiences prejudice as a result of being impeded from prosecuting his meritorious case. Rush only wishes for a level playing field. Moreover, if opposing counsel is so confident that three hours a week of access to legal materials is sufficient, including computer and type writer access and delayed photocopies, then Rush expects that opposing counsel will stipulate to adhere to the same conditions. Otherwise, Rush expects opposing counsel to agree as to these facts.
See also Rayes v. Johnson, 969 F. 2d 700, 703-04 (8th Cir. 1992) (citing lack of ready access to a law library as a factor supporting appointment of counsel).

      Even if Rush did not experience chronic fatigue and mental and emotional distress, he could not hope to present his own case in any meaningful manner under such conditions. Consequently, both sets of conditions greatly impair/impede Rush's ability to adequately present his own meritorious case.

      3. Rush's case is uncommonly complicated. (See above Aff't above). It is clear after considering these facts that Rush's case is not factually simple and or a legally straight forward deliberate indifference claim.

      Indeed, our Sister Circuit recently held that counsel was warranted for a pro se deliberate indifference claim, though, plaintiff "Greeno" faced less variety and less a complex issue than Rush has presented here. For example, the Greeno Court disagreed with the lower district court's assessment that Greeno's case was

> [F]actually simple and legally straight forward [,] because [a]s Greeno points out, his medical records, letters, health services requests, and inmate complaints span over two years. His case is also legally more complicated than a typical failure to treat claim, [and] because it requires an assessment of the adequacy of the treatment that Greeno did receive, a question that will likely require expert testimony. See Greeno v. Daley, 414 F.3d 645, 658 (7th Cir. 2005).

At a minimum, Rush's case facts are not only substantially similar –but are actually more involved and complex than Greeno's. For instance, like Greeno, Rush's medical conditions/complaints span over two years, but unlike Greeno's single medical condition (e.g. bleeding ulcer), Rush's claims involve three serious medical conditions, of which two meet of exceed two years as a continuing violation. Thus, they also involve questions of statute of limitations. Inherently, all involve the voluminous red tape, complaints, and documentation in excess of Greeno's case. In addition, like Greeno, Rush's claims will likely require an assessment of the adequacy of treatment regarding (1) denial of care for Lipoma growths, (2) FCM & CMS's treatment or lack thereof of Rush's Hep C disease, and (3) the denial of care for Rush's painful and deteriorating right shoulder condition. Indeed, Rush claims that both FCM and CMS intentionally provided him less efficacious medical care and such claims require an assessment of the adequacy of said care –questions that will require expert testimony. Additionally, Rush claims that two defendant corporations engaged in a custom/policy to deny him care and or a pattern of gross reckless disregard or denial that equated to deliberate indifference. Courts have held that the "'difficult and subtle question' of state of mind required for deliberate indifference is too complex for pro se plaintiff[s] to understand and present to a jury." Id at 658 (citing Swofford v. Mondrell, 969 F. 2d 547, 552 (7th Cir. 1992).This can only become more complicated when it involves –as here- two defendant corporations. Consequently, Rush's case is uncommonly complicated and counsel is required to sort and present the multiple complex issues and personal involvement.

    4. Rush's case requires the testimony of a medical expert if for the purpose of refuting corporate defendant's use of an expert witness.

    5. Rush's case requires extensive discovery and though he has already secured some of his medical records, etc, he will require still more extensive discovery. . In addition, discovery is required to determine the identity of John Doe M.D. defendant and or to identify multiple witnesses –both current and past employees of corporate defendants; secure medical records, and cross-check with multiple sources because CMS has intentionally introduced fabricated medical entries into Rush's medical file; and, research corporate contracts, responsibility, holdings, past/current consent decrees of other similar litigation and grievances; and or subpoena and depose corporate policy decision makers.

    Consequently, Rush's several claims, several individual defendants, and several corporate defendants will require extensive discovery –and not merely written because Rush does not intend to forego arguably the most

valued discovery device available to a litigant: verbal/taped depositions –especially for cooperating past-employee defendants. See Tucker v. Dickey, 613 F. Supp 1124, 1133-34 (W.D. Wis 1985).

6. Rush's facts will be strongly disputed and credibility will be a "key" issue in this case. Moreover, deliberate indifference involves a defendant's subjective state of mind and this inherently thrusts their credibility into a contest with Rush's claims. Credibility issues support appointment of counsel. Gatson v. Coughlin, 679 F. Supp. 270, 273 (W.D.N.Y. 1988).

7. Rush is unable to afford counsel, though he has unsuccessfully attempted to solicit counsel on seven occasions. For example, Rush wrote the following law firms, but was unsuccessful at gaining their services:

  (i) Benson Joseph W. Esq.,
  (ii) Neuberger Thomas S. Esq,
  (iii) Connolly Bove Lodge & Hutz,
  (iv) Marshall, Dennehey, Warner, Coleman & Goggin, and
  (v) Hampton Stephen A.

Naturally, Rush is indigent as demonstrated by his in forma pauperis motion.

9. Rush requires counsel to effect meaningful, good faith settlement negotiations with multiple past employee defendants: D. Plante, C. Mahanely, Niaz M.D., Durst, M.D. and or Rodweller. Rush believes these past/current employee defendants will cooperate with Rush by providing him with truthful testimony regarding corporate defendant's custom/policy to deny needed medical care, because Rush will offer to waive all claims against them in exchange for said cooperation. Rush is a prisoner and logistics impede his ability to effectively negotiate, contract, and subsequently examine and cross-examine and depose any cooperating defendant witnesses. Counsel is warranted to dispose of these claims and defendants.

## CONCLUSSION

For the foregoing reasons, the Court should grant Rush's motion and appoint counsel in this case.

_David Rush_
David Rush, 173418,
DCC, 1181 Paddock Rd.
Smyrna, DE 19977

09/07/07
Date